298

Hargrove *v.* Frommeyer & Company (et al., Appellant).

Lee *v.* Frommeyer & Company (et al., Appellant).

300

Argued March 21, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Jan E. DuBois,* with him *Richard M. Jordan,* and *White and Williams,* for appellant.

*Andrew F. Napoli,* for appellee at No. 1351; *Barbara Ann Duffy,* for appellee at No. 1352.

OPINION BY VAN DER VOORT, J., June 21, 1974:

On March 10, 1961, Plaintiffs-Appellees Hargrove and Lee were employed at the site of a warehouse under construction in the City of Philadelphia. On the above date, the Appellees were engaged in the pouring of a concrete floor in the unfinished warehouse when one of the recently constructed walls of the building suddenly came tumbling down on top of them. They were severely injured and thereafter separately brought suits to recover damages from United States Plywood Corporation (hereinafter referred to as Plywood), the party for whom the warehouse was being constructed, and Frommeyer and Company (hereinafter referred to as Frommeyer), the masonry subcontractor on the job. The general contractor on the job, Robert E. Lamb, Inc. (hereinafter referred to as Lamb), the employer of the Appellees, was joined as an additional Defendant in both cases. The two separate actions were consolidated for trial purposes. A jury trial was held, lasting several days, and the jury awarded substantial verdicts for each Appellee against both original Defendants and the Additional Defendant.

The Appellant, Plywood, alleging numerous errors, filed Motions for a New Trial and Judgment *non obstante veredicto.* After consideration of Appellant's arguments, the Court below, sitting en banc, denied the Motions and Judgments were entered upon the verdicts. The instant appeal followed, in which the Appellant

raises nine points of alleged error in the conduct of the trial, for which it again seeks judgment notwithstanding the verdict, or in the alternative, the award of a new trial. In the consideration of such an appeal, this Court is of course required to consider the evidence in the light most favorable to the Appellees. *Karam v. Pennsylvania Power and Light Co.,* 205 Pa. Superior Ct. 318, 208 A. 2d 876 (1965).

The Appellant first argues that it was error for the trial judge to submit to the jury the issue of whether Appellant designed the warehouse wall and thereby incurred liability for defects in design, and secondly, claims error in the judge's instruction to the jury on the issue of design of the warehouse. The record shows that Plywood had a Maryland construction company initially prepare a plan for a building; thereafter, Plywood filed plans with appropriate governmental agencies to secure permits or licenses for the construction. When filed with these agencies, the name of the Maryland firm had been stricken from almost every plan and drawing and Plywood's name and the designation of its "Design Department" and its address had been substituted. In addition, part of the contract between Plywood and Lamb included a form normally used by architects; at each place on this form (except two) where the word "architect" appeared, it was stricken and the word "owner", in reference to Plywood was inserted. There was also evidence that one of Plywood's engineers visited the job site on occasion before the accident, to review the progress of the construction and to comment on needed revisions. Finally, it is noted that Plywood, in answer to interrogatories made a part of the record, specifically denied it had an independent architect who prepared plans or specifications for the job.

The Plaintiffs offered expert testimony that one of the contributing causes of the collapse of the wall was that the block used in the construction of the wall was

too narrow to adequately support the wall to the height planned.[1]  It was not rebutted that the plans filed by Plywood called for the dimension of block actually used.  The Appellant's evidence in regard to the design of the building was well summarized by the lower court in its opinion: ". . . Plywood produced an employee who averred that he did not prepare the plans.  In other words, despite the fact that Plywood was unquestionably in a superior position to come forward with affirmative evidence on this issue, it contented itself with simply asserting who the designer was not."

Under the circumstances, as related above, it is clear that the trial court quite properly submitted for the jury's consideration the issue of Appellant's responsibility for design of the wall as part of the ultimate question of liability.  Further, Appellant seeks review of the trial court's charge to the jury on this point.  Since Appellant failed to specifically except to this part of the charge, we would have to find basic and fundamental error in order to grant a new trial.  *Dinio v. Goshorn*, 437 Pa. 224, 270 A. 2d 203 (1969); *James v. Ferguson*, 401 Pa. 92, 162 A. 2d 690 (1960).  Our review finds no such error and this contention of Appellant must be denied.

Next, Appellant claims the trial court erred in refusing to rule, as a matter of law, that the negligence of Lamb and Frommeyer constituted superseding causes to relieve Plywood of any liability.  A superseding cause may basically be described as an intervening act (or

---

[1] The wall in question was built to a height of 18 feet. It was constructed of so-called "8 inch" block; this description is apparently used to describe block which has an actual width of only 7-5/8 inches. The wall stood on a foundation which was 6 inches wide at the base of the wall. Since the block was wider than the foundation, the construction featured an overhang of 1-5/8 inches where the top of the foundation supported the bottom row of blocks in the wall.

acts) of negligence which operates (or operate) to insulate an antecedent tortfeasor from liability for negligently creating a dangerous condition which results in injury. *Roadman v. Bellone,* 379 Pa. 483, 492, 108 A. 2d 754 (1954). In *Whitner v. Lojeski,* 437 Pa. 448, 263 A. 2d 889 (1970), our Supreme Court discussed the concept of superseding cause and stated that: ". . . a subsequent negligent act . . . will not relieve the original actor of liability if . . . it is 'a normal consequence of a situation created by the actor's conduct, and the manner in which it is done is not extraordinarily negligent' [citing the Restatement of Torts, Second, §447]. While the Pennsylvania cases have sometimes conditioned an intervening actor's sole liability on his awareness of the danger to be avoided at a time when avoidance was still possible, this is but another way of saying that negligence in the face of a known danger is extraordinary. That is, it is one thing for an intervening actor to be unable to avoid a peril . . . because, through inattention, the danger was not observed in time; it is quite another to fail to exercise reasonable care and take proper action to avoid [the harm] after having become aware of the danger created by the original actor's negligence. In the first case, the intervenor's negligence may be called ordinary, and as to the first actor, a risk reasonably to have been foreseen; in the second case, negligence in the face of peril is properly denominated 'extraordinary' and as in §447 excuses the original actor of liability for the harm brought about by the intervening negligence." *Id.* at 461-2, 263 A. 2d at 896.

In order to avoid liability, the *Defendant* must show not only that the other causes contributed to the harm, but that they would have brought about the injury without his negligent act. See *Boushell v. J. H. Beers, Inc.,* 215 Pa. Superior Ct. 439, 442-443, 258 A. 2d 682, 685 (1969). In the review of the Appellant's contentions in this respect, we must be mindful of the long-

standing maxim that a trial judge must submit questions of negligence to the jury if there is evidence to support a reasonable conclusion that defendant is liable. *Templin v. Harbold,* 210 Pa. Superior Ct. 310, 231 A. 2d 883 (1967). A court may rule, as a matter of law, on questions of negligence only when the evidence is clear and unmistakable. *Moore v. Zimmerman,* 221 Pa. Superior Ct. 359, 292 A. 2d 458 (1972).

It is with these concepts in mind that we examine the contention of the Appellant that numerous acts and failures to act by both Lamb and Frommeyer constituted superseding causes as a matter of law. These allegedly included building the foundation too narrowly at the top, insufficiently bracing the wall, failures to fill support pilasters with concrete, and even allowing the Plaintiffs-Appellees to work in the area of the wall. The record shows the Appellees provided expert testimony that *even if the foundation had been wide enough* (and assuming all other conditions the same as existed at the time of the accident), the use of the narrow block called for in the plans would have caused the wall to collapse. As to the alleged failure to brace the part of the wall that fell, it is noteworthy that the part of the wall that fell had stood for several days *without bracing* and that the contract between Plywood and the general contractor was devoid of any requirement that bracing be employed. The Appellant's argument with respect to the failure to fill the pilasters is of no consequence as the record is lacking in any proof that the wall would have stood had the pilasters been filled. Lastly, viewing the evidence as we must, in the light most favorable to Appellees, there was no evidence that any agent of either Lamb or Frommeyer saw the wall wavering (as a result of winds) until a few seconds before it tumbled down on the Appellees working beside it. On the basis of the above, we cannot find that it was error for the trial judge to conclude

that Appellant had not shown, in a "clear and unmistakable" manner that the intervening negligence of Lamb and Frommeyer was so "extraordinary" as to constitute a superseding cause as a matter of law. See *Bleman v. Gold*, 431 Pa. 348, 353-354, 246 A. 2d 376 (1968). Appellant also challenged the trial court's refusal to instruct the jury on the issue of superseding cause as Appellant requested. In all cases questioning the accuracy of the charge, we must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Whitner v. Lojeski*, supra at 454, 263 A. 2d at 892, *Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 422, 219 A. 2d 666, 668 (1966). As related above, the record clearly shows that Appellant did not meet the burden of showing superseding causes as a matter of law. Further, the evidence supporting Plywood's concurring negligence on any one of several theories is ample; in our view, only a highly strained and slanted review of the record could support a finding of superseding causation. The judge's charge to the jury covered, *inter alia*, the theories of concurrent negligence as set forth in the Restatement of Torts (2d) §431 and §432. In so doing, the judge advised the jury properly that Appellant's negligence must be a *proximate cause and substantial factor* in causing the injury in order to find Appellant liable. Therefore, after reviewing the total charge and the evidence in support thereof, we find no reversible error in the trial court's refusal to charge the jury on the issue of superseding cause.

The Appellant next alleges error in the conduct of the trial by claiming: "There was insufficient evidence to submit to the jury the question whether appellant could be held liable as a property owner in control of the construction project for the failure of independent

contractors (a) to follow plans and specifications in constructing the foundation and floor of the warehouse, and (b) to brace properly its unfinished walls."

In the resolution of this issue, we must review both the charge to the jury on this point and the evidence of control exercised by Plywood on the job.[2]

Initially, in our review of the charge, we must dismiss Appellant's claim that the jury had submitted to it questions of Appellant's negligence with respect to the proper bracing of the finished walls. The trial court, in its charge, did not even allude to the possibility of Plywood's negligence on this theory and Appellant's contention with respect to the bracing or lack of it has no validity.

The Court, in its charge did submit to the jury the question of whether Plywood bore any liability for shortcomings in the foundation erected by Lamb. The court advised the jury, in this respect, to consider the evidence of the degree of control and supervision exercised by Plywood over Lamb in the consideration of whether Plywood knew of or should have known of defects in the foundation. This being the case, we must review the testimony and exhibits which might support the submission of this issue to the trier of fact.

The testimony revealed that Plywood provided all of the detailed plans and specifications for the job to Lamb. More about these plans will be discussed *infra*. Further, it was shown that during the course of con-

---

[2] It is noted that while Appellees have argued this issue in support of the lower court's charge to the jury on this facet of the evidence, the Appellant has not in fact challenged the *propriety* of the charge. The Appellant's claim, rather, is that the evidence was insufficient to go to the jury on the issue of control. An examination of the charge by this court is therefore relevant only to the extent necessary to determine what specific questions were actually submitted to the jury by the lower court, as will be more fully explored, *infra*, in this opinion.

struction, one Jerome Quinn, a civil engineer on Appellant's staff, visited the job site to review the construction. During the course of these visits, Quinn made comments on the construction which resulted in revisions being made.

Among the exhibits available to the jury was the agreement between Plywood and Lamb mentioned previously. What might be termed the first half of this agreement was a standard form contract commonly used between parties in the construction industry; it delineates the rights and duties of the owner, architect and contractor. At every place, except two, in this ten page, small print contract, where the word architect appears, it was deleted and the word owner is inserted. The two exceptions are in two clauses which are totally deleted involving the "Architect's Status" and "Architect's Decisions"; essentially both clauses make the architect a type of "buffer" or "arbitrator" in disputes between the owner and contractor. Thus, in this part of the agreement, Plywood assumed all the powers, controls and supervisory authority normally vested in the architect on a construction project, in addition to the normal authority of a non-architect owner. The indicia of control and supervision vested in Plywood by this part of the agreement include, *inter alia*, the following:

(1) Contractor must furnish complete progress schedule to Plywood; power in Plywood to approve progress schedule, and starting and completion dates for the various stages of construction.

(2) Power to pass upon shop drawings (which are all required to be submitted by contractor); power to make corrections which contractor must follow; requirement that any deviation from drawings must be approved in writing by Plywood.

(3) Contractor must submit all "samples", as directed, for Plywood's approval.

(4) Power to require contractor to furnish proof of kinds and quality of materials used.

(5) Contractor must notify Plywood of any changes in plans and specifications, etc. even if such changes are required by applicable law.

(6) Contractor must supply Plywood with names of any safety inspectors employed; contractor can only act without Plywood's approval "in an emergency affecting the safety of life or of the work or of adjoining property".

(7) Plywood shall have constant right of inspection of work in progress, even to the extent of uncovering completed work already done; contractor must notify Plywood of readiness for inspection by Plywood or "another authority".

(8) Contractor must furnish Superintendent and assistants "all satisfactory" to Plywood and cannot, with certain exceptions, change the Superintendent without Plywood's consent.

(9) Plywood can "order extra work or make changes by altering, adding to or deducting from the work".

(10) Plywood can pass upon any subcontractors proposed by the contractor.

The above recitation does not include all of the powers and authority retained by Plywood in the so-called "General Conditions" or first half of the contract.

The second half of the agreement, the so-called "Special Conditions" contains specific and detailed instructions concerning the manner, procedure and chronology of construction steps to be followed by the contractor and the quality, type and in some cases even the brand name of the materials to be used. This part of the contract also calls for the approval of the "Engineer" at numerous stages of construction. A single example of such matters is contained in the following excerpt from the "Special Conditions" section dealing

with concrete and cement work: "The Contractor shall notify the Engineer upon removal of forms. The Engineer shall inspect the newly stripped surfaces; any portion which is, in the judgment of the Engineer, damaged beyond repair shall be removed and recast at no additional cost to the Owner. Those surfaces to be repaired shall be restored as prescribed below or in a manner approved by the Engineer." It will be recalled that the only engineer who the record reveals visited the job site was Appellant's employee.

On the basis of the evidence listed above, and other evidence in the record, we cannot agree that it was error to submit the issue of Appellant's control to the jury. In *Celender v. Allegheny County Sanitary Authority,* 208 Pa. Superior Ct. 390, 222 A. 2d 461 (1966) this Court passed upon a similar factual situation, but found a lack of the necessary control in the Defendant owner. In doing so we commented on the requirements of Section 414 of the Restatement of Torts (Second), which are directly applicable to the issue here involved. We said in that case that in order to find the control necessary to establish liability on the part of an employer of an independent contractor ". . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* at 396. On the basis of the evidence of the supervision enjoyed by Plywood in the instant case, it would have been clear error to withhold from the jury the question of liability based on that control. The lower court aptly pointed out that cases cited by Appellant featured no employer who retained the degree of control enjoyed by Plywood. We find this contention of Appellant to be wholly without merit.

Appellant, in its sixth assignment of error, claims fundamental error in the lower court's submission to the jury of the question of Appellant's negligence un-

der Section 416 of the Restatement of Torts (Second).[3] In support of this claim, Appellant raises three arguments. It first argues that the employees of an independent contractor are not included among those to whom the employer of the independent contractor owes a non-delegable duty as set forth in the Restatement. In *Jacobini v. I.B.M. Corp.*, 222 Pa. Superior Ct. 750, 294 A. 2d 756 (1972), our Court affirmed per curiam the holding of the lower court (at 57 D. & C. 2d 8) finding the employer of an independent contractor liable for harm to the latter's employees in reliance on Section 416. Our position remains the same, as we feel such employees are clearly owed the duty and afforded the protections established by that section of the Restatement (Second). See also *Woolen v. Aerojet General Corp.*, 57 Cal. 2d 407, 369 P. 2d 708 (1962), and cases cited therein.

Plywood next claims that Section 416 was not applicable since the work performed by the independent contractor did not involve "peculiar risks" requiring "special precautions". The Comments to §416 refer us back to §413, Comment "b", for an explanation of the terms "peculiar risk" and "special precautions". It is there stated that the risks in contemplation are: ". . . peculiar to the work to be done, and arising out of its character . . . arising out of the particular situation created . . . a special recognizable danger". Our review of the

---

[3] That Section, which has been adopted by the Pennsylvania courts (See *Philadelphia Electric Co. v. Julian*, 425 Pa. 217, 228 A. 2d 669 (1967), reads as follows: One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

evidence reveals that the design of the wall (which collapsed) failed to meet the recognized standards in the industry, relevant regulations adopted by the United States government, and also the applicable provisions of the building code of the City of Philadelphia. In essence, the Appellant knew or should have known that the wall was too narrow to support its own height with any stability.

Although the construction of a wall might not normally involve the type of "peculiar harm" envisioned by §416, the defects in design in the wall in issue herein, in our opinion, would require "special precautions" as called for in the Restatement. Appellant's argument to the contrary is not meritorious.

The final claim raised by Plywood in connection with §416 is that it carefully selected an experienced contractor and is thus immune from liability under that Section of the Restatement (Second). In raising this argument, Appellant places reliance on language in a comment to Section 413. The comments to Section 416 direct the reader to the Section 413 comments only to the extent that the terms "peculiar risk" and "special precautions" are explained in the earlier section. The Appellant ignores several other matters which need only brief analysis. Both Sections 413 and 416 are contained in Chapter 15 of the Restatement of Torts (Second), a chapter which covers the "Liability of An Employer of an Independent Contractor". Sections 410 through 415 inclusive, of that Chapter, are contained in Topic I, which is entitled "Harm Caused by *Fault of Employers* of Independent Contractors". (Emphasis supplied). Topic 2, which begins at Section 416 and ends with Section 429, is entitled "Harm *Caused By Negligence of a Carefully Selected Independent Contractor*". (Emphasis supplied). Most simply stated, the topic titles as quoted above detail the two different theories of liabili-

ty, which Appellant has ignored in raising this argument; under one series of rules the employer may be held liable for *his own* negligence, while in the other he may be found liable for harm caused *by the most carefully selected independent contractor.* Our analysis on this point could not be more comprehensive than nor improve upon the Introductory Notes supplied by the authors of the Restatement (Second) as a prelude to Topics 1 and 2 of Chapter 15.

Next, for the first time, on appeal, Appellant claims a fatal variance between Appellees' pleadings and the proof adduced at trial. Appellant of course is precluded from raising this claim for the first time at this late stage of the proceedings. See *Malone v. Melnick,* 378 Pa. 483, 106 A. 2d 806 (1954); *Slingluff v. Dennis,* 376 Pa. 91, 101 A. 2d 755 (1954). Moreover, our review of the record reveals no prejudice or surprise suffered by Appellant as a result of any alleged theory of negligence pursued or evidence offered in support thereof by Appellees at trial.

Lastly, in support of this appeal, Plywood claims it is entitled to a new trial because the jury heard testimony from Appellees' actuarial expert concerning the use of an inflationary factor in the computation of lost earnings for purposes of damages. In the case of Appellee Hargrove, the record shows no testimony which might support this allegation. Such testimony was offered in support of Appellee Lee's claim for damages. If the jury had been left to consider damages solely on the basis of that testimony, we would be disposed to find error. See *Brodie v. Philadelphia Transportation Co.,* 415 Pa. 296, 203 A. 2d 657 (1964). However, the trial judge in the instant case thoroughly and clearly explained the correct method for the computation of damages to the jury, in accord with *Brodie.* This explanation by the court, in our opinion, erased any mis-

conception which the jurors might earlier have entertained as a result of the actuary's testimony concerning an inflationary factor. It is pertinent to note that Appellant has not claimed, on appeal, that the damages assessed in favor of Appellees were excessive.

The judgments are affirmed.