486 A.2d 410

**John ACKERMAN, Appellant,**

v.

**Ronald M. DELCOMICO.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1984.

Filed Dec. 12, 1984.

Reargument Denied Jan. 28, 1985.

Petition for Allowance of Appeal Denied June 18, 1985.

570

Henry E. Rea, Jr., Pittsburgh, for appellant.

John W. Blasko, State College, for appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

CAVANAUGH, Judge:

This is an appeal from an order of the Court of Common Pleas of Centre County, sitting *en banc*, denying appellant's Motion for New Trial, and entering judgment on the verdict in favor of appellee. In his suit, appellant, Ackerman, a pedestrian, sought damages from appellee, Delcomico, a motorist, as a result of accidental injury.

Ackerman contends that the lower court erred in: (1) allowing the introduction of evidence on the issue of intoxication of appellant, and, (2) charging the jury on 75 Pa.C.S. § 3550, when there was no evidence that the appellant was a "hazard" under that section. We agree with appellant that the lower court erred in its charge to the jury on 75 Pa.C.S. § 3550, insofar as it expressly incorporated the

presumption under 75 Pa.C.S. § 1547(d)(3), which was unduly prejudicial to appellant. We therefore reverse and remand for a new trial.

The record reveals the following. Appellant, who was on foot, was struck by a vehicle operated by appellee at an intersection in State College, Pennsylvania. The accident occurred on March 4, 1979 at approximately 11:00 P.M. The night was foggy and rainy. The only witness to the accident were the two parties herein and Janet Zoller, appellant's girlfriend. Ackerman testified that he had no independent recollection of the events in question. Appellee testified that he did not see appellant until after he had hit him. Therefore, Zoller was the only witness able to observe and testify to appellant's conduct before being struck.

The accident occurred as Ackerman and Zoller, who was walking five feet behind appellant, proceeded to cross Atherton Street, at its intersection with Westerly Parkway. The street is approximately forty feet wide, and has two lanes running south and one running north. When they first stepped off the curb, thus entering the northbound lane, the green light for the traffic was in their favor, and they started to cross the street. About the time Zoller reached the double yellow line, she looked up and noticed appellee coming down the downgrade of Atherton Street towards them, in the far southbound lane, that is, the lane closest to the curb. At that time she also looked at the traffic signal and noticed that the light had changed, so that they were then crossing against the light. Appellee testified that he saw Zoller from about a distance of twenty yards from the intersection, but did not see Ackerman. Zoller testified that she saw appellant glance in the direction of appellee's car, but that he continued to walk at the same rate of speed. Appellant was struck approximately three feet from the curb.

Zoller and Martin Brown, appellant's roommate, testified that appellant had been drinking beer since late in the afternoon on the day of the accident. Appellee testified, as did the medical personnel who treated appellant after being

struck, that appellant's breath smelled strongly of beer. In addition, a blood alcohol content of .195 was read into the record from appellant's hospital record. Additional evidence from appellant's hospital record was read into the record which revealed that appellant admitted drinking heavily that afternoon, and that after the accident he had slurred speech and an unusually low level of alertness. Notably, however, Zoller testified that before the accident, appellant was not slurring his speech, staggering, or swaying in his gait or exhibiting any type of conduct evidencing an intoxicated state.

The issues on appeal are whether the court erred: in admitting into evidence certain testimony proffered for the purpose of proving appellant was intoxicated; and, in its charge to the jury.

There are several statutory provisions pertinent to our consideration:

**75 Pa.C.S. § 3550. Pedestrians under influence of alcohol or controlled substance**

A pedestrian who is under the influence of alcohol or any controlled substance to a degree which renders the pedestrian a hazard shall not walk or be upon a highway except on a sidewalk.

**75 Pa.C.S. § 1547, Chemical testing to determine amount of alcohol or controlled substance,** in effect at the time of trial, provided in pertinent part:

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle while under the influence of alcohol, the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath or blood, which analysis was conducted with equipment of a type approved by the Department of Health and operated by qualified personnel, shall be admissible in evidence.

(d) **Presumptions from amount of alcohol.**—If chemical analysis of a person's breath or blood shows:

. . . .

(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, it shall be presumed that the defendant was under the influence of alcohol.

To facilitate our discussion of this case, we have distilled the analysis into three distinct parts.

1. *Evidence of Intoxication Regarding A Pedestrian Allegedly Under the Influence of Alcohol*

■ There has been scant case law involving an allegedly intoxicated pedestrian who has been struck by a motor vehicle. In *Kriner v. McDonald*, 223 Pa.Super. 531, 533–34, 302 A.2d 392, 394 (1973), the court stated:

evidence tending to establish intoxication on the part of a pedestrian is inadmissible unless such evidence proves unfitness to be crossing the street. Pennsylvania courts have gone to great lengths to enforce this rule. Consequently, *no reference should be made to a pedestrian's use of alcohol unless there is evidence of intoxication or copious drinking* on the part of the pedestrian; for example, evidence that the injured party was staggering or had liquor on his breath gives support to such an inference.

(Emphasis added.)

In *Sentz v. Dixon*, 224 Pa.Super. 70, 73, 302 A.2d 434, 436 (1973), the court said:

Although the allegedly intoxicated party here was a pedestrian, rather than the driver of an automobile, the question of intoxication still relates to his recklessness or carelessness in conducting himself at the time he was struck by appellee's vehicle. The factual issue involved is similar to that in the cited motor vehicle collision cases, e.g., was appellant intoxicated to a degree showing recklessness or carelessness which might relieve appellee of liability due to appellant's contributory negligence.

In the case at bar, there is evidence which could reasonably establish that appellant was intoxicated, so as to make it necessary to place before the jury the issue of whether he was so influenced by alcohol to be a "hazard." There was corroborated testimony that appellant had been drinking heavily in the late afternoon and evening before the accident. There is also corroborated testimony that appellant had a strong odor of alcohol and slurred speech after the accident. Looking at all the evidence, there is much more than a suggestion of intoxication and, therefore, we conclude that the evidence of appellant's intoxication was properly admitted, and was not prejudicial as determined in *Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969) and *Vignoli v. Standard Motor Freight, Inc.,* 418 Pa. 214, 210 A.2d 271 (1965) (when carelessness or recklessness is at issue, mere fact of consuming alcohol not admissible, being unfairly prejudicial, unless it reasonably establishes intoxication).

> 2. *Is Evidence of Blood Alcohol Content Admissible Under These Circumstances?*

Neither *Kriner* nor *Sentz, supra,* consider whether *blood alcohol content* of a party should be admissible under the circumstances. The sole statutory provision concerning blood alcohol content is in 75 Pa.C.S. § 1547, relating to criminal prosecution for driving under the influence. However, in related contexts, civil cases pursuant to the Dram Shop Act, 47 P.S. § 4–493(1), where a party was allegedly served alcohol while visibly intoxicated, and, civil motor vehicle cases where the driver of a motor vehicle was allegedly intoxicated, our courts have addressed this issue. We have permitted evidence of blood alcohol content in civil cases where visible intoxication or recklessness or carelessness of a driver is sought to be proved. *Couts v. Ghion,* 281 Pa.Super. 135, 421 A.2d 1184 (1980) (Spaeth, J. concurring in the result, Van der Voort, J. dissenting); *Cusatis v. Reichert,* 267 Pa.Super. 247, 406 A.2d 787 (1979); *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 381 A.2d 1295 (1977) (blood alcohol content generally admissible, but not when

given three hours after accident). *Cf. Billow v. Farmers Trust Co.,* 438 Pa. 514, 266 A.2d 92 (1970) (breathalyzer result was sole evidence of alleged intoxication and therefore inadmissible). Likewise, we have recently permitted such evidence in a case where the issue was whether a visibly intoxicated person was served intoxicating beverages. *Suskey v. Moose Lodge No. 86,* 325 Pa.Super. 94, 472 A.2d 663 (1984).

It should be noted that in cases involving civil suits, that is, service to a visibly intoxicated person and unfitness to operate a motor vehicle, evidence of alcohol consumption may be admitted only if there is evidence of the conduct of the party which fairly suggests that he was intoxicated. However, we are careful to underscore that only in criminal prosecutions under the Motor Vehicle Code has the "presumption" of intoxication under 75 Pa.C.S. § 1547(d)(3) been permissibly. charged to the jury.

■ The theory behind allowing a blood alcohol level to be admitted into evidence in a civil case is that it is relevant circumstantial evidence relating to intoxication. However, blood alcohol level alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted. *Cusatis v. Reichert, supra; Couts v. Ghion, supra* (test must be given within a reasonable time after accident); *Schwarzbach v. Dunn, supra* (test results, where test given three hours after accident, may not be extrapolated by expert who will testify as to probable blood alcohol level at time of accident).

■ Under the circumstances of this case and based upon existing authority, where there was independent evidence of intoxication, we believe that appellant's blood alcohol content was relevant circumstantial evidence relating to his alleged intoxication. The evidence as to Ackerman's alcohol consumption, his demeanor and appearance would, under these cases, appear to be sufficient to present the issue of

intoxication for jury consideration of whether or not he was so influenced by alcohol to be a "hazard". Under prior authority, *Sentz, supra,* and *Kriner, supra,* in which allegedly intoxicated pedestrians were involved, we believe that evidence of intoxication and blood alcohol content are relevant and admissible when it shows a pedestrian's unfitness in crossing the street. *See also Cook v. Philadelphia Transportation Co.,* 414 Pa. 154, 199 A.2d 446 (1964).

However, in determining that the admission of blood alcohol level was proper, we would nonetheless underscore the concern of this Court in *Suskey v. Moose Lodge No. 86,* 325 Pa.Super. 94, 472 A.2d 663 (1984), of admitting into evidence a blood alcohol level without explanatory expert testimony in a civil case. Although the admission of the blood alcohol content has been condoned by this court in both Dram Shop Act cases and civil motor vehicle cases where there is a fair inference of intoxication already established, and we felt compelled to follow these precedents in *Suskey* as well as presently, we remain skeptical as to the value of this evidence to the jury. Without explanation, the blood alcohol content has little meaning to factfinders and quite possibly great potential for resulting prejudice to the party against whom it is used. However, for the above reasons, we find that the court below did not err in allowing the introduction of evidence, including appellant's blood alcohol level, on the issue of intoxication of appellant.

3. *Was It Proper to Charge the Jury With Respect to the "Presumption" of Being Under the Influence of Alcohol?*

The next contention appellant makes is that the court committed reversible error in instructing the jury.

■■■ The court's charge was as follows:

Now, in this case you are instructed that from our Motor Vehicle Code, Section 1547, there are certain presumptions, one of which applies here. If chemical analysis of a person's breath or blood shows: That the amount of alcohol by weight in the blood of the person tested is

0.10 percent or more, it shall be presumed that the defendant was under the influence of alcohol. You are instructed that that applies in this case.

We agree with appellant that the court's charge was erroneous, causing sufficient prejudice to appellant so as to warrant a new trial.[1]

1. We disagree with the conclusion of the court below that because the jurors answered question #1, "Was the defendant Ronald M. Delcomico negligent?", on a special verdict form, in the negative, any error in the admission of evidence relating to appellant's alleged intoxication or in the charge relating to 75 Pa.C.S. § 3550 is harmless.

We do not believe that the use of special interrogatories could circumvent the prejudice caused by the erroneous charge or trial court error. We note that the charge, which we find caused reversible error, was prejudicial to appellant's case in that it embodied a *presumption* of intoxication of appellant based on the evidence. We believe that Pennsylvania caselaw proscribes the use of a presumption where the fact is properly to be found by the jury. *Richmond v. A.F. of L. Medical Service Plan of Philadelphia*, 421 Pa. 269, 218 A.2d 303 (1966). The determining consideration is, "[i]f erroneous fundamental instructions *may* have been responsible for the complained of verdict, a new trial is mandatory". *Id.*, 421 Pa. at 271–72, 218 A.2d at 304; *Vaughn v. Philadelphia Trans. Co.*, 417 Pa. 464, 209 A.2d 279 (1965); *Pedretti v. Pittsburgh Railways Co.*, 417 Pa. 581, 209 A.2d 289 (1965). *See also Criner v. Greco*, 190 Pa.Super. 316, 154 A.2d 294 (1959).

Moreover, the erroneous charge involved the presumption of intoxication of appellant under the *Motor Vehicle Code*. The issue in the case is not whether appellant was fit to operate a motor vehicle, but whether he was under the influence of alcohol to a degree which rendered him a hazard when walking upon the highway. What the lower court did, in effect, was to charge that appellant was, for the purposes of the pedestrian statute, *presumed* to be intoxicated according to his blood alcohol indicant. If the jury believed none of the evidence pertaining to appellant's consumption of alcohol that night, except for the blood alcohol indicant, and followed the judge's instructions, it would have found appellant to be intoxicated for the sole purpose of driving a car, *not* walking upon a highway. We believe that due to the potentially inflamatory effect of evidence having to do with the consumption of alcohol, *see e.g., Suskey v. Moose Lodge No. 86*, 325 Pa.Super. 94, 472 A.2d 663 (1984); *Billow v. Farmers Trust*, 438 Pa. 514, 266 A.2d 92 (1970); *Cusatis v. Reichert*, 267 Pa.Super. 247, 406 A.2d 787 (1979); *Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980), the judge's charge of the presumption of intoxication based on the evidence of blood alcohol content was highly prejudicial and *may* have been responsible for the appealed-from verdict. While a jury found that the appellee was not negligent, this does not remove the prejudice to the appellant by the error in the charge. The error pertaining to the "presumption" of appellant's intoxication permeated the entire charge and we cannot say that the jury's finding

We believe that the charge without more, even if it were given in a criminal prosecution under the Motor Vehicle Code, is erroneous. We base this belief on two prior Pennsylvania cases which discuss the presumption of 75 P.S. 1547(d)(3). *See Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974); *Commonwealth v. Gearhart,* 253 Pa.Super. 238, 384 A.2d 1321 (1978). In *Commonwealth v. DiFrancesco, supra,* the court, using 75 P.S. § 624(1)(c), the precursor of the statute in effect at the time of trial, held:

> What the statute refers to as a "presumption" is, strictly speaking, only a standardized permissible inference. Although the terms "inference" and "presumption" are often used interchangeably, this Court has adhered to the prevailing view among legal commentators, and drawn a distinction between these two concepts. *See Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974); *Commonwealth v. Shaffer,* 447 Pa. 91, 105–106, 288 A.2d 727, 735 (1972). *See generally* McCormick's Handbook of the Law of Evidence § 342 ff. (2d ed. E. Cleary 1972); 9 J. Wigmore, Treatise on Evidence § 2490 ff. (3d ed. 1940). According to this view, an inference is

that the appellee was not negligent is unrelated to the erroneous charge pertaining to appellant's intoxication. "The primary duty of the trial judge in charging a jury is to clarify the issues so that the jury is able to comprehend the questions they are to decide." *Carrender v. Fitterer,* 310 Pa.Super. 433, 437, 456 A.2d 1013, 1015 (1983). We must look to the charge in its entirety *against the background of the evidence* in order to determine if there was prejudicial error. *Berry v. Friday,* 324 Pa.Super. 499, 472 A.2d 191 (1984); *Jacob Kline Cooperage, Inc. v. George W. Kistler, Inc.,* 286 Pa.Super. 84, 428 A.2d 583 (1981); *Smith v. Chardak,* 291 Pa.Super. 173, 435 A.2d 624 (1981); *Hargrove v. Frommeyer & Co.,* 229 Pa.Super. 298, 323 A.2d 300 (1974). The key is whether the jury has been misled, and to determine this we must consider the entire charge. "Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies." *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576, 475 Pa. 1314, 1316 (1984). In this case, the error in the charge went to the very important issue, the degree of appellant's intoxication. In the instant case, the charge could well have misled the jury to the extent that it found the appellee was not negligent. In our opinion, the error was not harmless, and in the light of the evidence presented at trial, was sufficiently prejudicial to warrant a new trial.

merely a logical tool which permits the trier of fact to proceed from one fact to another. A presumption, on the other hand, is a procedural device which not only permits an inference of the "presumed" fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in binding instructions on the issue of the presumed fact's existence in favor of the party invoking the presumption. But the notion of a directed verdict against a criminal defendant is contrary to accepted tenets of criminal justice. Placing the burden of production on a defendant under the threat of such a sanction would run afoul of the presumption of innocence, *see Commonwealth v. Bonomo,* 396 Pa. 222, 229–230, 151 A.2d 441, 445–446 (1959), as well as the defendant's privilege of declining to testify. Thus, where the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. *See generally Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974).

From this perspective, it is apparent that virtually all so-called "criminal presumptions" are really no more than permissible inferences. Subsection (c)(3) of § 624.1 is no exception. Our lower courts have so construed it; *see, e.g., Commonwealth v. Thompson,* 27 Som. 241 (1971), aff'd 221 Pa.Super. 824, 292 A.2d 425 (1972) allocatur refused, which contains a thorough and scholarly discussion of the question. *See also, People v. Guilford,* 20 App.Div.2d 192, 245 N.Y.S.2d 781 (1964); *cf. State v. Cooke,* 270 N.C. 644, 155 S.E.2d 165 (1967).

Of course a permissible inference may affect the burden of production in the practical sense that it increases the risk that a defendant who fails to produce countervailing evidence may suffer an adverse verdict. In this sense, the evidence forming the basis of a statutory inference functions no differently from the other evidence in the prosecution's case: the stronger the evidence against a defendant the greater will be the pressure on

him to come forward with evidence in his own defense. It is in this loose, practical sense that courts and legislatures occasionally speak of shifting a burden to the defendant in a criminal case. *See, e.g., Barnes v. United States,* 412 U.S. 837, 845–846, nn. 9, 11, 93 S.Ct. 2357 [2362–2363, nn. 9, 11], 37 L.Ed.2d 380, 387–388 (1973); *Tot v. United States,* 319 U.S. 463, 469–470, 63 S.Ct. 1241 [1245–1246], 87 L.Ed. 1519, 1525 (1943); *DeWoody v. Superior Court,* 8 Cal.App.3d 52, 56–57, 87 Cal.Rptr. 210, 212–213 (1970), construing California Vehicle Code § 23126.

*Id.* 458 Pa. at 193–94 n. 3, 329 A.2d 207–08 n. 3.

This decision was rendered as a result of an attack by appellant on the constitutionality of § 624.1 of the Motor Vehicle Code.

Section 624.1(b) provides:

"(b) In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle or tractor while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath, his blood, or his urine, which analysis was conducted with equipment approved by the secretary and operated by qualified personnel, shall be admissible in evidence.

"(c) If chemical analysis of a person's breath, blood or urine shows—

. . . .

(3) That the amount of alcohol by weight in the blood of the person tested is ten one-hundredths (0.10) percent or more, it shall be presumed that the defendant was under the influence of intoxicating liquor.

The precise issue before our Supreme Court was whether § 624.1(c)(3) was an infringement upon appellant's constitutional rights because of its provision that a person whose blood alcohol indicant was 0.10 per cent or more "shall be presumed" to be under the influence of intoxicating liquor. The Supreme Court held that § 624.1 was not unconstitu-

tional because the " 'presumption' raised is really no more than an inference which the jury may accept or reject in light of all the evidence in the case." *Commonwealth v. DiFrancesco*, 458 Pa. at 199, 329 A.2d at 211, *quoted with approval in Commonwealth v. Gearhart*, 253 Pa.Super. 238, 244, 384 A.2d 1321, 1324 (1978) (footnote omitted). As stated in *Gearhart*, although the statute at issue herein passes constitutional muster, "a simple reading of the statute to the jury is not acceptable. The trial judge must bring home to the jury the non-compulsory nature of the inference." *Id.*, 253 Pa.Superior Ct. at 244, 384 A.2d at 1324.

The court in the present case did qualify the presumption. However, since we find that there should have been no reference to the statutory presumption we need not decide the sufficiency of the court's explanation.

Although we do not agree with appellant that the blood alcohol content was inadmissible, it is clear that the correlative presumption [2] under 75 Pa.C.S. § 1547(d)(3) is not relevant or admissible in regard to the question of whether a pedestrian is under the influence of alcohol to a degree

---

**2.** 75 Pa.C.S. § 1547, *as amended*, (amended December 15, 1982, effective January 15, 1983), provides in pertinent part:

    (c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

    ....

    (d) **Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:

    ....

    (3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731. Of particular note is the fact that in § 1547(d)(3), the language has been changed significantly with the 1982 amendment. There is presently no language regarding a presumption if a blood alcohol content is greater than or equal to .10. *Cf.* 75 Pa.C.S. § 1547(d)(3), prior to the 1982 amendment, *supra* at 412, 413.

which renders him a hazard under § 3550, that is, legally unfit to walk upon the highway.

It is noteworthy that in the statute, Pedestrians under the influence of alcohol or controlled substance, 75 Pa.C.S. § 3550, there is no mention of measuring blood alcohol content or applying any presumption arising therefrom which is similar to the provisions of 75 Pa.C.S. § 1547. The express provisions in the Motor Vehicle Code under § 1547(c), (d), designed for the purpose of determining whether one was driving while under the influence in a criminal prosecution pursuant to 75 Pa.C.S. 3731, are specifically related to motor vehicle operation and should not, absent clear legislative authority, be borrowed by or read into the Pedestrian Statute (§ 3550). We, therefore, conclude that the use of the presumption is inappropriate in a hazardous pedestrian case. In *Suskey v. Moose Lodge No. 86*, 325 Pa.Super. 94, 472 A.2d 663 (1984), we held that the presumption of legal intoxication pursuant to § 1547(d)(3) shall not be charged where the issue is visible intoxication. The functions of operating a motor vehicle, appearing to be visibly intoxicated and walking upon a public street are so unrelated that charging the presumption of intoxication under § 1547, even as modified to be understood as a permissible inference, in either of the latter two cases is not logical and causes undue prejudice to the appellant.

As previously discussed in *Suskey v. Moose Lodge No. 86, supra*, there has been much confusion generated by the court's use of the presumption of intoxication where a party's blood alcohol level is greater than or equal to .10. This presumption was not intended by the Legislature to be used, and should not be used, in cases involving visible intoxication as in *Suskey*, or a hazardous pedestrian under § 3550. In addition, it is nowhere authoritatively stated or implied that the use of the presumption in § 1547(d)(3) shall apply to a civil case. We therefore hold that the court below erred in its charge to the jury regarding 75 Pa.C.S. § 3550, which referred to § 1547(d)(3) and therefore order a new trial.

Reverse and remand for a new trial. We relinquish jurisdiction.

McEWEN, J., filed a dissenting opinion.

McEWEN, Judge, dissenting:

I agree with the conclusions of the majority, first, that the evidence of the intoxication of appellant was properly admitted and was not prejudicial and, second, that the trial court properly allowed the introduction of evidence upon the issue of the intoxication of appellant, including the blood alcohol level of appellant. I am not, however, convinced that the "presumption" of 75 P.S. § 1547(d)(3) should not be applied in a civil case. It is, nonetheless, unnecessary to analyze and address my hesitation to accept this conclusion of the majority for the reason that even if, *arguendo*, the trial court erred in its charge to the jury that the presumption of § 1547(d)(3) was applicable to the pedestrians referred to in 75 Pa.C.S. § 3550, the error was, in my opinion, harmless.

The author of the majority opinion has in his usual fashion provided a careful analysis as well as a most persuasive expression of view for holding that a new trial is necessary. Since, however, the jury returned a specific finding that the defendant driver was *not* negligent, surely, as the distinguished trial judge declared, the error found by the majority in but a quite limited portion of the charge is harmless. Moreover, I am convinced that however favorably to the plaintiff or unfavorably to the defendant the trial judge may be forced to alter his charge, ninety-nine out of one hundred juries would render a verdict against this plaintiff.

Since we are, of course, precluded from reliance upon such instinct or odds, but are obliged to attempt an erudite articulation of position, I will simply reiterate the rationale for upholding jury verdicts that I earlier expressed in a dissenting opinion in *Saylor v. Rose*, 319 Pa.Super. 560, 568–569, 466 A.2d 686, 690–1 (1983):

The right to a trial by a jury is zealously guarded because the benefits of a trial by jury are not simply theoretical but have through the centuries proven so real as to become self-evident. As a result, our trust in the value of the jury verdict in resolving the type of factual issue here presented—as distinguished from a verdict upon a complex question of medical or product liability—should be near absolute. The founders concluded that a band of the citizenry—peers, says the Magna Carta—is naturally suited to the task of resolving factual disputes, whether the difference in testimony be innocent or influenced by personal interest; in addition, of course, it is an obvious and certain fact that the court room cause—whether it be of an accused or of a litigant—is, if not prudently never left to the sovereign, always more wisely entrusted to the people than to the government of any of its branches.

Once we acknowledge that the value of the jury system is not mere premise but fact, it naturally follows that the verdict of a jury should be considered to be controlling and final. While it is undisputed that a safety valve is necessary and that a trial judge should be able to reject a verdict, that safety valve should be triggered only when there is a gross disparity between the verdict and the evidence or there has been gross and harmful error. Neither of those tests are here met.

*   *   *   *   *   *

The fundamental purpose of the instructions by a court is to express to the jury in general, survey fashion a basic outline of the applicable principles of law so that the jury might have the benefit of certain essential rules as the members assort the testimony, reflect upon the evidence and assemble a verdict. . . . If the charge of the court is to achieve the goal of assisting the jury and is not to be considered as a credit balance available for redemption in the event of an adverse verdict, then a verdict should be final, absent a gross shortcoming in the trial—specifically, as earlier noted, unless there is a gross disparity

between the verdict and the evidence or there has been gross and harmful error.

It cannot reasonably be asserted that there is here a gross disparity between the verdict and the evidence and, for my part, there has been neither gross nor harmful error. Therefore, the verdict should stand.