J-S73026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAEFFER'S ULTRABRIGHT CARPET | : | No. 388 MDA 2017 |
| CLEANING | : | |

Appeal from the Judgment Entered March 20, 2017
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2011-CV-7025-CV

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 15, 2018**

Appellant, Charles Minor, appeals from the trial court's March 11, 2016, and February 2, 2017 Orders, as made final by the March 20, 2017 entry of Judgment in favor of Appellee, Shaeffer's Ultrabright Carpet Cleaning, in this premises liability action.  On appeal, Appellant challenges the trial court's Order permitting the introduction of evidence of his alcohol consumption on the day of his fall.  After careful review, we affirm.

The facts and procedural history are as follows.  On March 26, 2010, between 2:00 PM and 2:30 PM, Appellant fell down two or three steps outside the apartment building in Harrisburg in which he resided.  Appellant fractured his ankle when he allegedly tripped and fell over a hose used by an employee of Appellee as the employee was cleaning a second-floor apartment.

_____
* Retired Senior Judge assigned to the Superior Court.

Shortly after his fall, Appellant reported to Harrisburg Hospital. Harrisburg Hospital Emergency Department triage staff noted upon his arrival that Appellant had been drinking alcohol.[1] Appellant's admission record prepared by Dr. Jonas Varaly indicates Appellant's blood alcohol content ("BAC") level at 0.07% at 4:58 PM.[2] Appellant admitted that he had consumed "less than a beer."[3] Harrisburg Hospital staff treated Appellant for a fractured and dislocated ankle and administered him Dilaudid, Morphine, Zofran, and Ativan.

On July 21, 2011, Appellant filed a Complaint raising one count of Personal Injury (Negligence) against Appellee.[4] Appellee filed Preliminary Objections to Appellant's Complaint on September 6, 2011. On September 20, 2011, Appellant filed a First Amended Complaint. Appellee again filed Preliminary Objections on October 7, 2011. Appellant filed a Second Amended Complaint on October 31, 2011. Appellee filed Preliminary Objections to the Second Amended Complaint on November 21, 2011. On

---

[1] Appellant's hospital record contains the notation "ETOH today." ETOH is an acronym for ethyl alcohol, which is the type of alcohol found in all alcoholic beverages.

[2] Appellant testified at his deposition that he "had a couple of sips of beer. It wasn't even a full beer. I just opened the beer, and I think I might have had just 2 sips." Deposition, 6/11/13, at 44.

[3] Appellant's Brief at 18.

[4] Appellant raised the same claim against his landlord, Elias Harbilas. Appellant stipulated to Harbilas' dismissal on December 5, 2013.

December 12, 2011, Appellant filed a Third Amended Complaint. On April 17, 2012, Appellee filed an Answer with New Matter to Appellant's Third Amended Complaint. On May 22, 2012, Appellant answered Appellee's New Matter.

Almost four years later, on February 29, 2016, Appellant filed a Motion in *Limine* to preclude argument, evidence, or testimony from Appellee's expert witness, Dr. James Roberts, regarding the impairment Appellant suffered as a result of the consumption of alcohol on the day of his fall. On March 7, 2016, Appellee filed a response to Appellant's Motion. By Order, docketed on March 11, 2016, the trial court denied Appellant's Motion.

A four-day jury trial commenced on September 25, 2016. Appellant preserved his objection to the admission of Dr. Roberts'[5] testimony and other evidence of Appellant's impairment caused by his intoxication on the day of his injury by placing it on the record on the first day of testimony.

On September 29, 2016, the jury returned a verdict in favor of Appellee. Appellant filed a Post-Trial Motion on October 10, 2016. The court denied this Motion on February 2, 2017. On February 16, 2017, Appellant filed a Motion for Reconsideration. On March 6, 2017, before the trial court

---

[5] Dr. Roberts is a board-certified emergency medicine physician and toxicologist whom the court qualified as an expert without any objection by Appellant.

ruled on Appellant's Motion for Reconsideration,[6] Appellant filed a Notice of Appeal.[7]

Appellant raises the following two issues on appeal:

1. Did the trial court err in denying Appellant's Motion in *Limine* to exclude any testimony, evidence[,] or argument regarding Appellant's blood alcohol content at the time of his fall, in the absence of corroborating evidence of Appellant's intoxication?

2. Did the trial court err in denying Appellant's Motion for Post-Trial Relief, seeking a new trial, based upon the fact that Appellee was permitted to introduce uncorroborated evidence of Appellant's alleged intoxication?

Appellant's Brief at 5.

Our review of this case involves both the trial court's denial of Appellant's Motion in *Limine* and the denial of his Motion for a New Trial. In both cases, "we apply an abuse of discretion standard." ***Coughlin v. Massaquoi***, 170 A.3d 399, 403-04 (Pa. 2017) (citation omitted).

In ***Coughlin***, our Supreme Court recently held that "the admissibility of BAC evidence is within the trial court's discretion based upon general rules governing the admissibility of evidence." ***Coughlin***, 170 A.3d at 400-01 (citing Pa.R.E. 401-403).

---

[6] The trial court denied Appellant's Motion for Reconsideration on March 11, 2017.

[7] Appellant filed his Notice of Appeal prematurely, as the prothonotary had not yet entered Judgment in favor of Appellee. However, on March 20, 2017, Appellant filed a *Praecipe* for entry of Judgment, and we treat the appeal as timely filed after the final Judgment was entered. ***See*** Pa.R.A.P. 905(a)(5).

Generally, evidence is admissible if it is relevant, *i.e.* if it "logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact[.]" **Commonwealth v. Jordan**, 65 A.3d 318, 324 (Pa. 2013). However, a court may exclude relevant evidence "if its probative value is outweighed by the likelihood of unfair prejudice." **Id.** at 324-25 (citing **Commonwealth v. Williams**, 896 A.2d 523, 539 & n.6) (Pa. 2006).

Appellant argues that the court should have excluded evidence of his intoxication because there was "no evidence of any impairment or intoxication on the part of Appellant." Appellant's Brief at 18. Analogizing the facts of this case to those in **Rohe v. Vinson**, 158 A.3d 88 (Pa. Super. 2016),[8] Appellant claims that Dr. Roberts' opinions do not form the proper basis for the admission of evidence of Appellant's BAC at the time of his fall. Appellant's Brief at 25. Appellant argues that, because Dr. Roberts formed his opinion that Appellant was intoxicated at the time of his injury only by calculating backwards from Appellant's BAC at the time staff measured it at the hospital, and did not cite any evidence of actual impairment, the

---

[8] In **Rohe**, this Court held that in order for BAC evidence to be admissible in a motor vehicle negligence action to prove intoxication, there must be not simply evidence of the actor's alcohol consumption, but "other evidence showing the actor's conduct which suggests intoxication." **Rohe**, 158 A.3d at 96 (citing **Ackerman v. Delcomico**, 486 A.2d 410, 414 (Pa. Super. 1984)).

potential prejudice caused by Dr. Roberts' opinion outweighed its probative value.[9]  *Id.* at 18, 23.  Appellant avers that the trial court erred in replacing the standard that "requires evidence of intoxication, with evidence of mere consumption."  *Id.* at 22.  He theorizes that the reason hospital staff asked him whether he had consumed alcohol prior to his fall was not because he was exhibiting signs of intoxication, but because they were going to give him medications with contraindications with alcohol.  *Id.* at 20, 24.

BAC alone is inadmissible to prove intoxication.  *Rohe*, 158 A.3d at 96.  However, it is well-settled that evidence of an actor's BAC combined with competent expert testimony interpreting the BAC level is admissible to show the actor's impairment as a result of the BAC level.  *Coughlin*, 170 A.3d at 409.

In *Coughlin*, a personal injury action against a motorist who killed a pedestrian who was crossing the street, our Supreme Court considered whether the defendant is required to present independent corroborating evidence of the decedent's *intoxicatio*n, in addition to expert testimony interpreting the decedent's BAC, before the BAC evidence was admissible.  *Id.* at 400.  The Court held that, as noted *supra*, "the admissibility of BAC evidence is within the trial court's discretion based upon [the] general rules

---

[9] In support, Appellant emphasizes the videotaped deposition testimony from his witness, Cherie Jacobs, that Appellant was not intoxicated or impaired at the time of his fall.  *See*, *e.g.*, Jacobs Deposition, 9/7/16, at 45-47.

governing the admissibility of evidence." *Id.* at 400-01. Given that standard, the *Coughlin* Court concluded that, in the context of a personal injury suit against the operator of a motor vehicle, where "an expert testifies thoroughly regarding the effects that a given BAC has on an individual's behavior and mental processes, and where that expert *specifically opines* that a particular BAC would render a pedestrian unfit to cross the street, we find the probative value of such evidence outweighs its potential for unfair prejudice." *Id.* at 409.

We recognize that the facts in *Coughlin* are distinguishable from the instant facts. However, the *Coughlin* framework for analyzing the admissibility of the evidence of Appellant's intoxication applies here.

In this case, Appellee raised the defense of Appellant's comparative negligence. In support of this defense, Dr. Roberts first calculated that, based on Appellant's BAC at the time hospital staff tested his blood about 2½ hours after the fall, Appellant's BAC at the time of the fall was .106%-.121%.[10] This is approximately 1.5 times the level legally defining alcohol intoxication in Pennsylvania.[11]

_____

[10] Based on his calculations, Dr. Roberts opined that Appellant's alcohol level at the time of his fall was "conservatively equivalent to approximately 5-8 alcoholic drinks." Report, 1/28/16, at 10. Dr. Roberts, thus, opined that Appellant's testimony that he barely drank from one can of beer "is absurd." *Id.* at 8-10.

[11] An individual in Pennsylvania is considered legally intoxicated with a BAC of 0.08%.

In his expert report, Dr. Roberts then addressed the physical and mental impairment associated with alcohol intoxication, noting that "negotiating hoses on the steps requires significant mental and physical prowess." Report, 1/28/16, at 10. Dr. Roberts explained that "[e]thanol is a potent central nervous system depressant and it acts like a general anesthetic. . . . Ethanol impairs motor, physical, and mental skills and competency by its direct effect on the brain, rendering information acquisition and information processing slower and less efficient. Ethanol in the blood directly impairs [ ] one's ability to make rational judgments, avoid obvious dangers, or perform motor, visual, and mental tasks in their normal manner." *Id.* at 9.

Dr. Roberts concluded that, in his professional medical opinion, Appellant's estimated BAC of 0.106%-0.121% at the time of his fall "would have rendered him more likely to engage in dangerous and reckless activities; be unaware or not concerned with obvious potential danger; and significantly impair him both mentally and physically." *Id.* at 13. In particular, Dr. Roberts explained that Appellant:

> would have had diminished capacity to exercise basic common sense, would have experienced impaired physical or mental ability to avoid being entangled in a hose, and more likely would have been stumbling, having trouble seeing, and mentally unaware or unconcerned of possible danger from trying to negotiate a hose on steps. In short, he was significantly impaired by alcohol. This altered mental and physical state was contributory to, if not totally responsible for, his fall.

*Id.* at 13-14.

As noted by the trial court in its February 2, 2017 Memorandum and Order, Dr. Roberts testified to the findings and opinions noted above. ***See*** Opinion, 2/2/17, at 3-4. Following our review, we conclude that the trial court did not abuse its discretion in admitting Dr. Roberts' expert report and testimony as evidence of the effect that Appellant's intoxication had on his motor, physical, and mental skills at the time of his fall. Therefore, pursuant to the analysis articulated in ***Coughlin***, we conclude that the probative value of Dr. Roberts' specific opinion testimony about the impairment caused by Appellant's elevated BAC outweighed its potential prejudice. Thus, the trial court properly denied Appellant's Motion in *Limine* and Motion for a New Trial.[12]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2018

---

[12] We further observe that, even if the trial court erroneously admitted evidence of Appellant's intoxication, its admission was harmless because the jury explicitly found no negligence on the part of Appellee.