J. A33002/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

ANN COUGHLIN, ADMINISTRATRIX OF :    IN THE SUPERIOR COURT OF
THE ESTATE OF THOMAS COUGHLIN, :        PENNSYLVANIA
DECEASED, :
                    :
          Appellant : 
                    :
            v. :        No. 3367 EDA 2014
                    :
UMMU MASSAQUOI : 

Appeal from the Judgment Entered January 26, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. July Term, 2013 No. 0355

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 23, 2016**

Ann Coughlin, administratrix of the Estate of Thomas Coughlin, deceased, appeals from the judgment entered January 26, 2015, in favor of defendant/appellee, Ummu Massaquoi. The decedent, Mr. Coughlin, was struck and killed by appellee while crossing the street. Evidence was presented that the decedent was heavily intoxicated at the time of the accident. The trial court denied appellant's pre-trial motion *in limine* to exclude evidence of the decedent's intoxication, including the toxicology report and the expert testimony of Richard Saferstein, Ph.D. The jury determined that appellee's negligence was not a factual cause of decedent's

_____

* Retired Senior Judge assigned to the Superior Court.

death.[1]   Post-trial motions were denied, and this timely appeal followed.

After careful review, we affirm.

The trial court has summarized the history of this matter as follows:

> This matter was tried before a jury over a period of three (3) days.  After deliberations, the jury returned a verdict finding the defendant negligent, but that her negligence was not the factual cause of the decedent's death.  As a result, the jury did not reach the question of damages.  Based upon the jury's finding as to the lack of causation on the defendant's part, the errors alleged to have been committed by this Court are without merit and a new trial is not warranted.
>
> This case arises from an accident that occurred on January 13, 2012, when Plaintiff's adult son, Thomas Coughlin, was killed while walking across Castor Avenue in the Northeast section of the City of Philadelphia.  He was struck by a car operated by the Defendant, Ummu Massaquoi.  Defendant admitted at trial to never seeing Mr. Coughlin at any time before the impact had occurred.  There were no eyewitnesses to this unfortunate event.
>
> Police investigation of this incident revealed that:
>
> **A** The [defendant's] vehicle was traveling south on the left lane of Castor Avenue approaching Howell Street.  Vehicle 1's left fender contacted the pedestrian.  The pedestrian partially mounted vehicle 1, riding the fender, which would be the front left side of the vehicle where the tire is -- above the tire, rather.  He then went onto the

---

[1] To the extent the jury's verdict could be characterized as inconsistent or against the weight of the evidence adduced at trial, that issue is not before this court.  The only issue on appeal is the admission of evidence of the decedent's intoxication.  (Trial court opinion, 6/30/15 at 2.)

[4] A-pillar.  The A-pillar is the framing of the car
[5] which holds -- in between the your [sic] windshield and
[6] your door frame, so it rides up.  Then the
[7] pedestrian struck part of the windshield and the
[8] left side-view mirror partially dislodging the
[9] mirror.

N.T., 08-04-2014, Pg. 56, L. 22 to Pg. 57, L.9.

Further, there were no witnesses who had previously observed Mr. Coughlin displaying any signs of intoxication or to his overall condition before he was killed.  Prior to being struck, his whereabouts were unknown.

Despite finding the defendant had operated her vehicle in a negligent manner prior to the time of impact, the jury did not conclude that the defendant's negligence was the factual cause of the decedent's death.  Given the factual circumstances, this may have been an inconsistent verdict since there were no other factors that the jury could consider in determining factual cause once the issue of negligence was resolved, however, that issue had not been preserved by Plaintiff, nor has it been raised as an issue on appeal, and, it is therefore deemed waived under Pa. R.A.P. 1925.

As to the issues raised on appeal in regard to intoxication, the decedent was pronounced dead shortly after the accident and his body was transported to the Office of the Medical Examiner where a complete autopsy, including drug and alcohol screens, was performed.  Defendant retained an expert toxicologist, Richard Saferstein, Ph.D., who testified at trial that Mr. Coughlin's blood alcohol levels (BAC) of .313 would have rendered him unfit to safely walk or cross the street on the night in question.

There is no indication that the jury relied upon the testimony of the defendant's expert witness in regard to the decedent's unfitness to cross the

street, as such reliance would lead this Court to believe that had such testimony been considered, the jury would have considered the decedent's actions in apportioning defendant's liability and the decedent's comparative fault.

Initially, in her Motion in limine, Plaintiff noted that the investigating police officer did not indicate anywhere in his report that the decedent had exhibited signs of intoxication. The first indication of intoxication was through post-mortem blood and urine testing which revealed that Mr. Coughlin's blood alcohol level was elevated and that he also had trace amounts of other illegal substances in his blood.[2]

Plaintiff argued that since neither the Defendant nor Fire rescue personnel who treated the decedent at the scene before he was transferred to the hospital, testified that Mr. Coughlin exhibited any traits of intoxication such evidence of BAC levels was inadmissible. The Defendant argued that Mr. Coughlin's extremely elevated BAC level of .313 rendered him unfit to be crossing a four-lane avenue between intersections at night. It was the extremely high BAC level that Dr. Saferstein relied upon [to] render the conclusion that Mr. Coughlin was a danger to himself and others on the roadway.

In considering these arguments, this Court denied Plaintiff's Motion in limine and permitted the admission of both the BAC test results and Dr. Saferstein's testimony into evidence at trial. Dr. Saferstein was precluded, however from opining as to the ultimate question of causation, as that was within the jury's domain in weighing and considering

---

[2] According to Dr. Saferstein, the toxicology report revealed the presence of cocaine metabolite in the decedent's blood, less than 100 micrograms per liter. (Notes of testimony, 8/5/14 at 22.) The presence of cocaine metabolite indicates cocaine use within the previous 24 hours; however, it would have had no effect on the decedent's behavior. (*Id.* at 25.) The decedent did not have cocaine in his system. (*Id.*)

J. A33002/15

> all of the evidence. As previously stated, the jury
> rendered a verdict of no factual causation.

Trial court opinion, 6/30/15 at 1-4.

The jury rendered its verdict on August 5, 2014. A timely post-trial motion was filed on August 15, 2014, and denied on August 25, 2014. A motion for reconsideration was filed on September 22, 2014, as well as a protective appeal notice on September 24, 2014.[3] Appellant's motion for reconsideration was denied on September 25, 2014. On October 9, 2014, appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days; appellant timely complied on October 29, 2014. The trial court filed a Rule 1925(a) opinion on June 30, 2015.[4]

Appellant has raised the following issues for this court's review:

> 1. Did the trial court err as a matter of law and/or abuse its discretion by denying plaintiff's motion in limine and admitting evidence of

---

[3] The mere filing of a motion for reconsideration is insufficient to toll the 30-day appeal period. Although a party may petition the court for reconsideration, the simultaneous filing of a notice of appeal is necessary to preserve appellate rights in the event that either the trial court fails to grant the petition expressly within 30 days, or it denies the petition. Pa.R.A.P. 1701; *Valley Forge Center Assoc. v. Rib-It/K.P., Inc.*, 693 A.2d 242, 245 (Pa.Super. 1997) (citations omitted).

[4] We note that appellant filed her notice of appeal from the August 25, 2014 order denying post-trial motions, an order which is generally interlocutory and not appealable unless reduced to judgment. However, judgment was subsequently entered on January 26, 2015; thus, we will consider the appeal filed after the entry of judgment. *Jones v. Rivera,* 866 A.2d 1148, 1149 n.1 (Pa.Super. 2005), citing *Dominick v. Hanson*, 753 A.2d 824, 825 n.1 (Pa.Super. 2000); Pa.R.A.P. 905(a).

Mr. Coughlin's post-mortem blood alcohol content ("BAC") when there was no additional, independent corroborative evidence of intoxication?

2. Did the trial court err as a matter of law and/or abuse its discretion in allowing the testimony of defendant's toxicology expert, Richard A. Saferstein, Ph.D., where the sole piece of independent "intoxication" evidence upon which Dr. Saferstein's testimony was based was Mr. Coughlin's purported post-mortem BAC?

3. Did the trial court err as a matter of law and/or misapply the law set forth in **Gallagher v. Ing**, 532 A.2d 1179 (Pa.Super. 1987) in denying plaintiff's motion for reconsideration and upholding the court's decision to admit evidence of Mr. Coughlin's BAC without additional independent evidence to corroborate intoxication?

Appellant's brief at 7.

We will address appellant's issues together, as they are interrelated. Basically, appellant argues that the decedent's BAC of .313 was inadmissible as a matter of law where there was no independent corroborating evidence of intoxication, **e.g.**, slurred speech, odor of alcohol, unsteady gait, **etc.** There was no evidence as to Mr. Coughlin's whereabouts prior to the accident. Appellant argues that there was no independent eyewitness testimony to support an inference that Mr. Coughlin had been drinking and was heavily intoxicated prior to the accident. According to appellant, Mr. Coughlin's BAC, in and of itself, was insufficient for the issue of intoxication to go to the jury. We disagree.

The Superior Court's standard for reviewing the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case. ***Melso v. Sun Pipe Line Co.***, 394 Pa.Super. 578, 576 A.2d 999 (1990), ***appeal denied***, 527 Pa. 667, 593 A.2d 842 (1991); ***Cooper v. Burns***, 376 Pa.Super. 276, 545 A.2d 935 (1988), ***appeal denied***, 522 Pa. 619, 563 A.2d 888 (1989). We will reverse the trial court's denial of a new trial only where there is a clear abuse of discretion or an error of law which controlled the outcome of the case. ***Vignoli v. Standard Motor Freight, Inc.***, 418 Pa. 214, 210 A.2d 271 (1965); ***Cashdollar v. Mercy Hospital of Pittsburgh***, 406 Pa.Super. 606, 595 A.2d 70 (1991). The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. ***Girard Trust Bank v. Remick***, 215 Pa.Super. 375, 258 A.2d 882 (1969). Abuse of discretion may occur through an honest, but erroneous use of discretion. ***Pachesky v. Getz***, 353 Pa.Super. 505, 509, 510 A.2d 776, 778 (1986); ***Adelman v. John McShain, Inc.***, 148 Pa.Super. 138, 24 A.2d 703 (1942). A new trial may not be granted merely because the evidence conflicts and the jury could have decided for either party. ***Hilbert v. Katz***, 309 Pa.Super. 466, 471, 455 A.2d 704, 706 (1983) (citations omitted). The grant of a new trial is appropriate, however, where the jury verdict ***may have been*** based on improperly admitted evidence. ***Wilkes-Barre Iron & Wire Works, Inc. v. Pargas of Wilkes-Barre, Inc. v. Caladie***, 348 Pa.Super. 285, 294, 502 A.2d 210, 215 (1985) (citations omitted).

***Whyte v. Robinson***, 617 A.2d 380, 382 (Pa.Super. 1992) (emphasis in original).

Questions regarding the admissibility or exclusion of evidence are also subject to the abuse of discretion standard of review. ***Rogers v. Johnson & Johnson***

> ***Products, Inc.***, 401 Pa.Super. 430, 436, 585 A.2d 1004, 1007 (1990) (citations omitted).  Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence.  ***Daset Mining Corp. v. Industrial Fuels Corp.***, 326 Pa.Super. 14, 22, 473 A.2d 584, 588 (1984).   Relevance is a threshold consideration in determining the admissibility of evidence.  ***Majdic v. Cincinnati Machine Co.***, 370 Pa.Super. 611, 618, 537 A.2d 334, 338 (1988).   A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice.  ***Daset***, ***supra***.   Generally for the purposes of this evidentiary rule, "prejudice" means an undue tendency to suggest a decision on an improper basis.  ***Id.***   The erroneous admission of harmful or prejudicial evidence constitutes reversible error.  ***Whitman v. Riddell***, 324 Pa.Super. 177, 471 A.2d 521 (1984).

***Id.*** at 383.

> Since ***Critzer v. Donovan***, 289 Pa. 381, 137 A. 665 (1927), the well-settled law of this Commonwealth is that where recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial, unless it reasonably establishes intoxication.  ***Cusatis v. Reichert***, 267 Pa.Super. 247, 249-50, 406 A.2d 787, 788-89 (1979) and cases cited therein.  The rule of ***Morreale v. Prince***, 436 Pa. 51, 53, 258 A.2d 508 (1969), states that such evidence of intoxication must reasonably establish a degree of intoxication which proves unfitness to drive where reckless or careless driving is the matter at issue.  This Court, in ***Kriner v. McDonald***, 223 Pa.Super. 531, 533-35, 302 A.2d 392, 394 (1973) extended the ***Critzer***/***Morreale*** rules of inadmissibility to evidence tending to establish intoxication on the part of a pedestrian.  According to ***Kriner***, such evidence of intoxication is inadmissible unless it proves unfitness to be crossing the street.   Furthermore, no reference should be made to a pedestrian's use of alcohol unless there is

> evidence of excessive or copious drinking. ***Cook v. Philadelphia Transportation Company***, 414 Pa. 154, 158, 199 A.2d 446, 448 (1964).

***Id.***

> The theory behind allowing a blood alcohol level to be admitted into evidence in a civil case is that it is relevant circumstantial evidence relating to intoxication. However, blood alcohol level alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted.

***Ackerman v. Delcomico***, 486 A.2d 410, 414 (Pa.Super. 1984) (citations omitted).

Instantly, Dr. Saferstein testified that an individual with a BAC greater than .31 would be unfit to cross the street safely:

> Well, let's talk in terms of the general public, because I don't know Mr. Coughlin and certainly didn't interact with him. But an individual who is at .31 would be severely, severely intoxicated. That's four times the legal level of driving in the Commonwealth of Pennsylvania, four times higher. So he was severely intoxicated due to that high concentration of alcohol.

Notes of testimony, 8/5/14 at 22.

> Talking about an average, normal human being at a .31, as I indicated, is severely intoxicated. So what can we expect from the impact of alcohol at that level? We can expect very poor muscular coordination. We can expect very poor body coordination. We can expect slow and unsteady hand movements and poor hand-to-eye and foot-to-eye coordination. But what's more, we can expect in the average person that that person would

be suffering from a significant deterioration in judgment and self-control. That person would become -- is a risk taker, taking chances that an average human being would not consider to be prudent. That's probably the most significant deterrent that you can associate with a person that's at that level. So that person could find himself or herself in situations that you and I would not consider to be tenable and would not consider to be appropriate. So there is a significant loss of caution and self-restraint in an individual of that high of blood alcohol level.

*Id.* at 23-24.

Dr. Saferstein also testified that even assuming Mr. Coughlin was a heavy drinker and had built up a tolerance for alcohol, his judgment would still be significantly impaired:

Users of alcohol may not show the outward manifestations of alcohol; they may not show the physical manifestations; they may not show poor body gauge; they may not show poor muscular coordination or hand-to-eye coordination. But tolerance is not a factor when it comes to judgment. Individuals -- we have not ever been able to establish that there's a relationship between alcohol tolerance with the so-called outward manifestations of alcohol and the ability of alcohol to deteriorate your judgment and self-control.

*Id.* at 26.

In Dr. Saferstein's expert opinion, with a BAC of .313, Mr. Coughlin would have been unable to safely traverse the intersection:

This individual was severely, severely intoxicated, and in my opinion, he could not safely cross the street without endangering his life and well-being. As I indicated, and I keep coming back to the same thing, at this level of intoxication, an average normal

> human being would be expected to show a significant deterioration in judgment and self-control. Now, how [to] blend that into the circumstances of this particular situation is not possible for me to say. You shouldn't be driving, and you shouldn't be taking chances walking as a pedestrian. So I think the best I thing [sic] I can offer is that we're dealing with a severely intoxicated individual who would be expected, as an average person, to be showing a significant decline in judgment and self-control.

*Id.* at 27-28.

Instantly, there is no eyewitness testimony to corroborate the fact of Mr. Coughlin's intoxication, *e.g.*, slurred speech, staggered gait, *etc.* No one saw Mr. Coughlin try to cross the street. No one actually saw him consume any alcohol. However, we have held that the "other" evidence of intoxication necessary to render admissible the results of a blood alcohol test does not have to consist of third-party eyewitness testimony, as appellant suggests, but may consist of expert testimony describing the effects of a particular BAC level on the average person. *See Gallagher v. Ing*, 532 A.2d 1179, 1183 (Pa.Super. 1987), *appeal denied*, 548 A.2d 255 (Pa. 1988) ("The 'other' evidence necessary to render admissible a blood alcohol content in excess of .10 percent, it has been held, may consist of expert testimony interpreting the significance of the results of blood alcohol tests with respect to unfitness to drive.") (citation omitted); *see also Braun v. Target Corp.*, 983 A.2d 752, 760 (Pa.Super. 2009), *appeal denied*, 987 A.2d 158 (Pa. 2009) ("Corroborative evidence to establish intoxication can be in the form of expert testimony, indicating that the level of drugs or

intoxicants in the injured party's bloodstream would have affected his judgment, coordination, and/or impaired his motor skills to such a degree that he was unfit to perform the activity in question."), citing **Gallagher**, **supra**.

Here, we determine that Dr. Saferstein's expert testimony was sufficient corroborating evidence for admission of the decedent's BAC result. Therefore, the trial court did not abuse its discretion in denying appellant's motion **in limine** and post-trial motion for a new trial.[5]

Judgment affirmed.

Stabile, J. joins the Memorandum.

Strassburger, J. files a Concurring Statement in which Stabile, J. joins

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2016

---

[5] As we find that evidence of Mr. Coughlin's alcohol consumption was properly admitted, we need not address the trial court's assertion that the jury must not have considered this evidence since it found appellee negligent.