J-A24044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHAUN MCDERMOTT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CONSOLIDATED RAIL CORPORATION AND NORFOLK SOUTHERN RAILWAY COMPANY | |
| | No. 284 EDA 2016 |

Appeal from the Judgment Entered December 4, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term, 2014 No. 000025

BEFORE: BOWES, OTT AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                     **FILED APRIL 20, 2017**

Shaun McDermott appeals from the December 4, 2015 judgment entered in favor of Consolidated Rail Corporation ("Conrail") and Norfolk Southern Railway Corporation ("Norfolk Southern") (collectively "the Railroads") in this Federal Employers Liability Act ("FELA") case. After careful review, we affirm.

The underlying facts are as follows.[1] Plaintiff testified that he worked for Conrail from 1975 to 1999, first as a trackman, then as a machine

_____

[1] The trial transcripts were filed with the trial court and transmitted as part of the certified record on appeal. However, transcripts of the videotaped depositions of Richard Morris, Dr. Maserati, and Dr. Christopher Donaldson,
*(Footnote Continued Next Page)*

* Former Justice specially assigned to the Superior Court.

operator, and finally as a repairman. As a trackman, he wielded a sledgehammer to pound spikes into railroad ties or a claw bar to rip up rails and change ties. He carried ties weighing over 200 pounds with the assistance of one other worker and eighty-pound joint bars by himself. When he operated machines, Plaintiff carried an air compressor behind the spike setters for two to three hours per day and performed the work of a trackman for the remainder of the shift. Repairmen were required to lift and carry heavy cylinders and motors to repair tampers or ballast regulators. In 1999, Plaintiff moved to Norfolk Southern, where he was a thermite welder, heavy equipment operator, frog welder, and ballast regulator until June 2013. Thermite welders carried heavy shears, grinders, oxygen and propane tanks, and boxes of thermite weighing about fifty pounds.

Plaintiff filed the within complaint against the Railroads under FELA alleging that while employed for the Railroads, he "was exposed to excessive and harmful and cumulative trauma to his bilateral knees, bilateral shoulders, neck and low back due to the excessive bending, lifting, twisting, carrying, stooping, squatting, kneeling, climbing and walking on uneven or

_(Footnote Continued)_ ─────────────────

were marked as exhibits at trial but not filed of record and hence, not transmitted to this Court. The inclusion of those transcripts in the Reproduced Record is not a substitute for their inclusion in the certified record. Since there appears to be no dispute that the deposition transcripts contained in the Reproduced Record are genuine, we have relied upon them to the extent necessary in determining whether the alleged evidentiary errors had any impact on the outcome of the case.

unlevel ballast." Complaint, ¶10. He routinely was required to lift and carry as much as seventy to one hundred pounds. His injuries were caused or contributed to or exacerbated by the negligence of the Railroads and "their agents, servants, workmen, and/or employees acting within the scope of their employment," *inter alia*, their failure to provide a safe workplace, negligently failing to employ safe work practices and safety rules, a program to prevent repetitive trauma, in negligently requiring him to be exposed to unsafe levels of repetitive trauma. His counsel told the jury in closing, "Every time that Shaun McDermott was required to lift something more than 50 pounds, the railroad was negligent." N.T. Vol. 4, 9/3/15, at 132.

The Railroads denied negligence and asserted contributory negligence against the Plaintiff, among other defenses. Prior to trial, the Railroads filed several motions *in limine*, one of which sought to preclude Plaintiff from introducing the testimony of a co-worker, James Kephart. Although Plaintiff maintained that Mr. Kephart's testimony was critical to corroborate his own account of the work performed by a welder and not duplicative and cumulative of testimony via videotape of another co-worker, Richard Norris, who was a repairman, the trial court disagreed and granted the motion.

During the cross-examination of defense witness William Barringer, the Safety Director of Conrail and then of Norfolk Southern, Plaintiff's counsel elicited testimony that Norfolk Southern's engineering department adopted a fifty-pound weight restriction, although he did not know when it was

implemented. The witness acknowledged that he had testified in prior depositions that Norfolk Southern did not have such a rule. N.T. Vol. 3, 9/2/15, at 228, 229, 230. On redirect examination, the witness clarified that it was a policy in the engineering or mechanical department, not the department in which Plaintiff worked. Thereafter, the Railroads produced a document described as a Mechanical Department Bulletin purporting to show that the policy governed the Mechanical Department and that it became effective in September 2013, after Plaintiff no longer worked for the Railroads. The trial court, after argument, ruled that Plaintiff was precluded from arguing to the jury that Norfolk Southern violated its own rule when it required Plaintiff to lift more than fifty pounds. Such a rule was irrelevant to the Maintenance of Way Department governing Plaintiff, and further, since it post-dated Plaintiff's employment, the rule was inadmissible evidence of a subsequent remedial measure.

The jury returned a verdict in favor of the Railroads and against Mr. McDermott, finding no negligence by a vote of ten to two. Appellant filed a post-sentence motion in which he alleged that a new trial was warranted due to two erroneous evidentiary rulings that changed the outcome of the case. The trial court denied the motion on December 4, 2015. Appellant appealed, complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court furnished its opinion. Appellant raises two issues for our review:

1. Did the trial court abuse its discretion in precluding James Kephart from testifying as a fact witness on behalf of Shaun H. McDermott in his entirety?

2. Did the trial court abuse its discretion in allowing the Defendants to use a Norfolk Southern memorandum that was not produced in discovery and was never identified as an exhibit and was never put into the record and was never provided to Plaintiff's counsel to preclude Shaun McDermott from arguing that Norfolk Southern was negligent in violating its own safety rules for requiring Shaun McDermott to lift and carry more than 50 pounds?

Appellant's brief at 4.

Our standard of review of "the trial court's denial of a motion for new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law that affected the outcome of the case." *Coughlin v. Massaquoi*, 138 A.3d 638, 642 (Pa.Super. 2016). The within appeal involves the propriety of two evidentiary rulings. The law is well settled that the admission of evidence is within the discretion of the trial court. *Czimmer v. Janssen Pharms., Inc.*, 122 A.3d 1043 (Pa.Super. 2015). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id*. at 1058 (*quoting* *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa.Super. 2007).

Appellant alleges that although FELA is a remedial statute that is to be liberally construed for the benefit of injured railroad workers, the trial court failed to construe it for the benefit of Mr. McDermott. By excluding James Kephart's testimony, Appellant contends, the court increased his burden of proof by limiting his ability to corroborate the negligence of the Railroads.

According to Appellant, Mr. Kephart was the only witness who could support Appellant's testimony that a welder was required to lift and carry heavy tools and equipment in excess of fifty pounds. He argues that the trial court's ruling precluding Mr. Kephart from testifying deprived the jury of the opportunity to hear about working conditions of a welder, the job performed by Mr. McDermott for many years, from another welder. He maintains that Mr. Kephart's testimony regarding the weight of items he was required to lift and his opinion of the safety of working conditions for a welder were not, as the trial court concluded, "duplicative and cumulative of the videotaped testimony of co-worker Richard Norris regarding their opinion of the safety of working conditions at the railroad."[2]

The Railroads counter that their own witness, Appellant's supervisor Ben Taggart, conceded that welders would sometimes be required to lift more than fifty pounds. Mr. Taggart verified Appellant's testimony that shears used by a welder weighed approximately 110 pounds, although usually they were carried by two workers. N.T. Vol. 3, 9/02/15, at 168. Mr.

---

[2] Plaintiff does not challenge the trial court's ruling that Mr. Kephart's back injury was not substantially similar to Plaintiff's injury so as to be admissible. Rather, Plaintiff's argument on appeal is limited to the propriety of the court's ruling precluding him from offering Mr. Kephart to corroborate the weight lifting requirements of a thermite welder and his opinion regarding the safety of the job. The trial court did not address this facet of Plaintiff's argument in its opinion although it was articulated in Plaintiff's post-trial motion and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Taggart also acknowledged that a thermite kit weighs forty-five to fifty pounds and that a cradle grinder weighs eighty-eight pounds, although "It rolls on the rail." *Id*. at 174.

Although the better course would have been to allow Mr. Kephart to testify regarding the working conditions of a welder, specifically the weights of equipment and tools commonly lifted and carried, we find any such error to be harmless. In addition to Mr. Taggart, Dennis Mitchell, the defense ergonomics expert, admitted that the weight of the shearer used by a welder exceeded fifty pounds. Mr. Mitchell also produced a videotape of a thermite weld depicting two men removing what he testified was a 111-pound shearer from the back of the truck and carrying it to a position on the rail. N.T. Vol. 4, 9/3/15, at 17, 43. Since it was undisputed by the defense that a welder was sometimes required to lift more than fifty pounds, and the defense evidence corroborated that fact, Appellant failed to demonstrate that the preclusion of Mr. Kephart's testimony affected the verdict. No relief is due on this ground.

Appellant's second contention is that the trial court abused its discretion when it permitted Conrail and Norfolk Southern to use a written memorandum that was never provided to Plaintiff's counsel to rebut the cross-examination of defense witness William Barringer. He argues that the document was not identified in discovery, never provided to Plaintiff's counsel, not marked as an exhibit, nor made part of the record.

Nonetheless, the trial court credited the memorandum for the proposition that the fifty-pound weight limit only became effective in September 2013, after Plaintiff left his employment, and only then in the Mechanical Department. Consequently, the trial court ruled that Plaintiff could not argue that Norfolk Southern was negligent for violating its own rules in requiring Plaintiff to lift and carry tools and equipment exceeding fifty pounds.

The following occurred during the cross-examination of Mr. Barringer by Plaintiff's counsel:

BY MR. JOYCE:

Q. Would you agree with me, Norfolk Southern developed a rule that said, don't lift more than 50 pounds?

A. It came out as standard procedure, I believe, in the engineering book. I don't know I ever saw it in a safety rule book, but it was a procedure within the engineering department.

Q. Would you agree that Norfolk Southern had a rule that said, what they developed, what I would call, a weight limit? You're not supposed to lift more than 50 pound by one person?

A. That was the policy they established, yes, sir.

Q. You're familiar with that?

A. In a high level. I didn't write the rule and I wasn't involved in the decision-making process for that particular rule.

Q. My question is, do you know when that was that Norfolk Southern came out with that rule about not lifting more than 50 pounds on the railroad?

A. No, sir, I do not.

MR. LYDA: Objection. Misstates evidence.

THE COURT: Sustained.

MR. LYDA: Move to strike.

THE COURT: Stricken.

. . . . .

BY MR. JOYCE:

Q. If an employee were lifting more than 50 pounds at Norfolk Southern, that would be a rule violation. Wouldn't it?

MR. LYDA: Objection.

THE COURT: Sustained.

BY MR. JOYCE:

Q. Did you have anything to do with Norfolk Southern implementing the rule not lifting more than 50 pounds?

A. No, sir, I did not.

Q. But you testified today and you've testified at previous depositions that they didn't, in fact, have that rule; correct?

A. I believe so.

Q. And you don't know when it was implemented?

A. No, sir, I do not.

N.T., Vol. 3, 9/2/15, at 267-269.

On redirect, defense counsel asked Mr. Barringer to confirm that the fifty-pound weight limit applied to the mechanical department. *Id*. at 270-271. The witness answered "Mechanical or engineering, I'm not sure." *Id*. at 271. Defense counsel then established that Plaintiff did not work in the

mechanical or engineering departments but in the Maintenance of Way Department. *Id*.

The next morning, there was an off-the-record discussion in chambers regarding Mr. Barringer's testimony. Counsel for Norfolk Southern produced a document that he represented to the court he received only the night before. Defense counsel identified it as a bulletin and proffered it to the court to establish that the fifty-pound weight restriction testified to by Mr. Barringer only applied to Norfolk Southern's mechanical department, and further, that it only became effective in September 2013, after Mr. McDermott was no longer employed. Thus, the Railroads contended, Mr. Barringer's testimony regarding the fifty-pound weight limit was not only irrelevant, but evidence of subsequent remedial measures inadmissible under Pa.R.E. 407 as well. The trial court agreed, and ruled that Plaintiff was precluded from arguing to the jury that Norfolk Southern violated its own rules and procedures by requiring Mr. McDermott to carry tools and equipment in excess of fifty pounds.[3]

Thereafter, the parties placed on the record the substance of the argument that had been advanced in chambers. Counsel for Norfolk Southern recapped his earlier representation to the court that the fifty-

_____

[3] We note that this ruling was consistent with the trial court's earlier ruling sustaining an objection to the question as to whether it would be a rule violation for an employee to lift more than fifty pounds at Norfolk Southern.

pound rule became effective September 4, 2013, after the Plaintiff no longer worked for the Railroad, so it was not relevant. Furthermore, evidence of the fifty-pound limit was inadmissible as a subsequent remedial measure.

Plaintiff's counsel restated his objection to the Railroad simply showing the court a piece of paper in chambers and representing that the fifty-pound limit was a subsequent remedial measure. Counsel pointed out that the memorandum was not in evidence. Furthermore, he argued that it was too late for the Railroad to proffer a document that it had not provided in discovery to preclude Plaintiff from arguing to the jury that the railroad was negligent for requiring Mr. McDermott to lift more than fifty pounds.

The trial court thereafter barred "any argument regarding subsequent remedial measures based on the information provided regarding the 50 pound rule, which went into effect after Mr. McDermott left and also not relevant as it . . . was a different department as well." *Id*. at 79.

Plaintiff claims that the trial court's reliance upon the memorandum, subsequently identified as a Norfolk Southern Mechanical Bulletin, to preclude Plaintiff from arguing that Norfolk Southern was negligent in violating its own rules was reversible error. Plaintiff complains that the document was not provided to him in discovery, not shown to him in chambers, and that it was not made part of the record. Plaintiff contends that the court's improper handling of the memorandum changed the outcome of the trial.

The Railroads counter that they showed the bulletin to the court and Plaintiff's counsel during argument in chambers. Furthermore, they contend the document was not produced in discovery because it was not responsive to Plaintiff's discovery requests. The record reveals that the bulletin was marked as an exhibit for purposes of identification. Norfolk Southern also argues that it did not violate any lifting limitation as there was no applicable limitation at the time. Finally, when the limitation became effective, Norfolk Southern asserts that it only applied to the Mechanical Department, not Plaintiff's department.

The manner in which this matter was brought to the court's attention is somewhat unusual. The defense did not object to Plaintiff's cross-examination concerning the existence of a weight limit. Nor did the defense object and move to strike the witness's testimony as irrelevant when Plaintiff succeeded in obtaining concessions from Mr. Barringer that: Norfolk Southern had a fifty-pound weight lifting limitation, albeit in the engineering department; that he had previously denied any such limitation; and that he did not know when that policy became effective. Rather, on redirect examination of its witness, Norfolk Southern clarified that the rule only applied to the Mechanical Department, not the Maintenance of Way department where Mr. McDermott worked. That was the state of the record at the close of trial on September 2, 2015.

The events of the next morning may best be characterized as an oral motion *in limine* by the defense to preclude Plaintiff's counsel from arguing that Norfolk Southern violated its own rules when it required Mr. McDermott to lift more than fifty pounds as part of his regular duties. A motion *in limine* is usually employed prior to trial "to obtain a ruling on the admissibility of evidence" and affords the trial court "the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs[.]" **Parr v. Ford Motor Co.**, 109 A.3d 682, 690 (Pa.Super. 2014). During trial, when an unanticipated evidentiary issue arises, oral motions are common. The "trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." **Id**.

The motion was based upon Mr. Barringer's oral testimony and an internal Norfolk Southern document proffered to the court in chambers, which was not authenticated and which constituted hearsay. The document purported to show that the Mechanical Department, not the Maintenance of Way Department for which Plaintiff worked, had adopted a fifty-pound weight lifting limitation effective in September 2013, which was after Plaintiff left the Railroad's employ. Plaintiff's counsel objected to the trial court's consideration of the document stating, "I don't think the railroad has the right to simply show the judge a piece of paper in chambers and say, this is a subsequent measure. It's not in evidence in the case . . . I think it's way too late for the railroad to come in here and pull out a piece of paper that

they never provided [sic] discovery to suggest that I can't argue to the jury that the railroad is negligent for requiring Mr. McDermott to lift more than 50 pounds." N.T., Vol. 4, 9/3/15, at 90-91.

The defense countered, "This document was never requested during the course of discovery. Secondly, it is irrelevant, nor would it be reasonably calculated to lead to the discovery of admissible evidence in that this is a mechanical safety bulletin dated September 4, 2013, well after Mr. McDermott left the railroad." *Id*. at 92.

While at first blush, Plaintiff's argument appears to have merit, upon further examination, it offers no basis for relief. Although Plaintiff claims prejudice since the document was not produced in discovery, he fails to direct our attention to anything in the record that would substantiate that the document would have been responsive to his discovery requests and was improperly withheld. Furthermore, after Plaintiff made his objection to the court's ruling, the document was marked as Exhibit D-32 for purposes of identification. Although the document was not admitted into evidence, it was intended to be part of the record for purposes of appeal.[4]

In this case, Mr. Barringer testified that there was a fifty-pound weight limitation in the engineering or mechanical department, but that he did not know when that limitation was imposed. The defense anticipated that

---

[4] Defense Exhibit 32 is not included in the certified record on appeal.

opposing counsel would argue to the jury that Norfolk Southern violated its own rules when it required Plaintiff to lift more than fifty pounds, thus creating an unsafe workplace. The defense sought a ruling precluding that argument and, to that end, it used the document to establish that the rule was not in effect when Plaintiff was employed, and furthermore, that it did not cover Plaintiff's department.

In essence, the defense used unauthenticated hearsay in support of its argument that Plaintiff should be precluded from arguing to the jury that the Railroads violated their own rules when they required Mr. McDermott to lift more than fifty pounds. The defense argued that evidence of a post-event change in practice, procedure, guideline or policy was evidence of subsequent remedial measures and would be inadmissible to prove negligence. Since evidence that Norfolk Southern adopted such a rule after Mr. McDermott manifested his injuries would not have been admissible to show the railroad was negligent *vis 'a vis* Mr. McDermott, any argument to that effect was improper and unsupported.

Preliminarily, we disagree with Plaintiff's contention that the bulletin was used to rebut Mr. Barringer's testimony. The Bulletin substantiated Mr. Barringer's testimony on redirect examination that the weight limitation applied to either the engineering or mechanical department. Mr. Barringer testified that he did not know when the rule became effective. The bulletin showed an effective date of September 2013, which post-dated Mr.

McDermott's employment with the Railroads. Moreover, the bulletin was not introduced into evidence.

Second, to the extent that Plaintiff's complaint about the document is an evidentiary one directed to its lack of authenticity or its hearsay nature, it lacks merit. In the instant case, the propriety of the anticipated argument depended on whether Norfolk Southern had a fifty-pound weight limitation that was applicable to Plaintiff. Under Pa.R.E. 104(b), the court was charged with determining whether that underlying fact was established so as to make such argument relevant and proper.[5] Generally, the rules of evidence do not apply to the court's determination of preliminary questions of fact with respect to the admissibility of evidence or the qualifications of witnesses to testify, with the exception of a determination of the application of privileges. *See* Pa.R.E. 104(a).[6] Such determinations often are made in the context of

---

[5] Pa.R.E. 104(b) provides:

> (b) Relevance That Depends on a Fact. When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

[6] Pa.R.E. 104, titled Preliminary Questions, provides in pertinent part:

> (a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

- 16 -

motions *in limine*.  ***See*** Pa.R.E. 103.   Courts are permitted to consider evidence that would be inadmissible in making preliminary determinations about the admissibility of evidence or the propriety of argument, the theory being that the judge must be able to hear any relevant evidence to resolve questions surrounding its admissibility.  ***See Commonwealth v. Raab***, (Pa. 2007) (hearsay evidence admissible at suppression hearing to establish probable cause).  The court could consider otherwise inadmissible evidence in making that determination.   This was not a situation where unauthenticated hearsay evidence was erroneously placed before the factfinder.

The Railroads anticipated that Plaintiff would argue that Norfolk Southern violated its own rule when it required Plaintiff to lift more than fifty pounds.   Even without considering the bulletin that was proffered in chambers, the evidence of record did not support that argument.   Mr. Barringer testified that the rule applied to the Mechanical Department, not the Maintenance of Way Department governing Plaintiff's jobs.   The document merely furnished an additional basis for precluding Plaintiff from making the argument to the jury, namely, that such argument would run afoul of the prohibition against evidence or argument of subsequent remedial measures.

Plaintiff's counsel argued in closing without objection that, "[e]very time that Shaun McDermott was required to lift something more than 50

pounds, the railroad was negligent." N.T., Vol. 4, 9/3/15, at 132. That occurred, according to Plaintiff's counsel, "hundreds of times in his career." *Id*. Thus, Plaintiff maintained he was not provided with a safe place to work, and these working conditions contributed to his back and knee injuries. We find no abuse of discretion in precluding Plaintiff's counsel from arguing that carrying equipment and tools exceeding fifty pounds was a violation of Norfolk Southern's rules as that argument was unsupported by the record.

Having concluded that the trial court did not abuse its discretion, we affirm.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2017