J-A11026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT & LINDA SOLO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SAMUEL POLIT | No. 1830 MDA 2016 |

Appeal from the Judgment Entered December 5, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2013-CV-4294

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:  **FILED NOVEMBER 09, 2017**

Robert and Linda Solo appeal from the December 5, 2016 judgment entered in favor of Samuel Polit in the Luzerne County Court of Common Pleas following a jury trial.[1]  We affirm.

The trial court set forth the factual and procedural history of this case as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Solos prematurely filed their notice of appeal on November 3, 2016, after the denial of their post-trial motion but before the entry of a final judgment.  Because the trial court subsequently entered judgment, we consider the Solos' appeal timely filed from the December 5, 2016 judgment. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 513 (Pa.Super. 1995) (en banc) (stating that "jurisdiction in [the] appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment").

[The Solos], a tenant and his wife, filed a Complaint against [Polit], their landlord, on April 8, 2013, alleging that [Polit] was negligent in maintaining the porch rail on their home, resulting in severe and permanent damage to Appellant Robert Solo [("Robert")] when he fell from the porch [at approximately 12:00 a.m. on March 8, 2012]. On June 8, 2015, [the Solos], through their counsel, certified the case for trial. Later, on August 20, 2015, [Polit] filed a Motion for Summary Judgment that this Court denied on October 8, 2015.

On April 29, 2016, [the Solos] filed a Motion in Limine to preclude evidence of [Robert's] blood alcohol level and expert testimony regarding such evidence[.] [Polit] filed his response to [the Solos'] Motion in Limine on May 3, 2016. On May 23, 2016, a jury trial commenced. After three days of testimony, the jury returned its verdict on May 26, 2016, finding in favor of [Polit].

[The Solos] filed a Motion for Post-Trial Relief on June 3, 2016. In their Motion for Post-Trial Relief, [the Solos] argued that the trial court erred by admitting evidence of [Robert's] blood alcohol content [("BAC")] on the day of the incident. [They] also challenged the trial court's denial of their motion for mistrial related to instructions given by the court and comments from the jury during deliberations. By Order dated October 6, 2016, this Court denied [the Solos'] Post-Trial Motion.

On November 3, 2016, [the Solos] filed a Notice of Appeal to the Pennsylvania Superior Court. [The Solos] filed their [Pennsylvania Rule of Appellate Procedure 1925(b)] Statement of Matters Complained of on Appeal on November 28, 2016 . . . .

Opinion, 1/5/17, at 1-2 ("1925(a) Op.") (internal citations omitted).

On appeal, the Solos raise three issues:

Whether the Trial Court erred in admitting [the] toxicology evidence when there was no evidence offered at trial to indicate that [Robert] was visibly intoxicated at the time of the incident of March 8, 2012 that gave rise to this claim.

> Whether the Trial Court erred in relying upon the matter of **Coughlin v. Massaquoi**, 138 A.3d 638 (Pa. Super. 2016)[2] as the controlling case law on the issue of the admissibility of [the] toxicology evidence.
>
> Whether the Trial Court erred in failing to grant [the Solos'] Motion for a Mistrial during jury deliberations when the jury inappropriately revealed how it stood in its deliberations in open court prior to the entry of a final verdict in this matter.

Solos' Br. at 5 (suggested answers omitted).

In their first two issues, the Solos challenge the trial court's admission of toxicology evidence presented by Polit's expert, Dr. Ronald E. Gots, who testified that Robert's BAC shortly after the accident was .244.[3]  The Solos argue that the evidence of Robert's BAC was inadmissible because "a [BAC] cannot be admitted into evidence in a civil case for the purpose of proving intoxication without other evidence."  Solos' Br. at 14-15.  They assert that because there were no eyewitnesses to the accident nor any evidence regarding Robert's physical condition preceding the accident, the BAC evidence was inadmissible.  We disagree.

We apply the following standard when reviewing a trial court's ruling on the admissibility of evidence:

_____

[2] The Pennsylvania Supreme Court affirmed our decision in **Coughlin** after oral argument in this case.  **See Coughlin v. Massaquoi**, ___ A.3d ___, 2017 WL 4287350 (Pa. filed Sept. 28, 2017).

[3] In their brief, the Solos also argue that Dr. Gots was not properly qualified to provide expert testimony in the field of toxicology.  Solos' Br. at 20-21. However, because the Solos did not raise this issue in either their Rule 1925(b) statement or their statement of questions of involved, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii), 2116(a).

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.***, 77 A.3d 1, 11 (Pa.Super. 2013) (internal citations and quotation omitted).

Recently, in ***Coughlin v. Massaquoi***, ___ A.3d ___, 2017 WL 4287350 (Pa. filed Sept. 28, 2017), our Supreme Court considered the question of whether evidence of a pedestrian's BAC may be admitted in a civil trial without independent, corroborating evidence of intoxication. In that case, the administratrix of Thomas Coughlin's estate filed a negligence action against the driver whose automobile struck Coughlin as he walked across the street. ***Id.*** at *1. Coughlin later died at the hospital; at the time of his death, his BAC was .313. ***Id.*** No eyewitnesses had observed Coughlin's condition or behavior immediately before the accident, and the police report did not indicate that Coughlin had appeared intoxicated at the accident scene. ***Id.***

At trial, the trial court permitted the defense expert to testify regarding the impact that a .313 BAC would have on a person's coordination, judgment, and self-control. ***Id.*** at *2. The expert opined that "the average person with a BAC of .313 would be 'severely intoxicated'" and "could not safely cross the street without endangering his life and well-being." ***Id.***

On appeal, the administratrix challenged the trial court's admission of Coughlin's post-mortem BAC without independent, corroborating evidence of his intoxication. *Id.* After reviewing prior precedent from this Court, the Supreme Court stated:

> [W]e reject the standard advanced by Appellant and utilized by the Superior Court in *Ackerman* [*v. Delmonico*, 486 A.2d 410 (Pa.Super. 1984),] and its progeny that requires independent, corroborating evidence of intoxication before BAC evidence may be admitted. We emphasize, however, that a pedestrian in a case such as this one is free to challenge such evidence by thorough cross-examination, or with testimony from his or her own expert.

*Id.* at *9.[4] Thus, the Supreme Court held that "the admissibility of BAC evidence is within the trial court's discretion based upon general rules governing the admissibility of evidence, *see* Pa.R.E. 401-403, and the [trial] court's related assessment of whether the evidence establishes the pedestrian's unfitness to cross the street." *Id.* at *1. The Court ultimately concluded that the evidence of Coughlin's BAC was admissible because it reasonably established his unfitness to cross the street. *Id.* at *9.

Here, Dr. Gots testified in detail regarding the impact of Robert's BAC on an individual's coordination and judgment. The trial court summarized Dr. Gots' testimony as follows:

> [Polit] presented expert testimony from Dr. Gots describing the effect of [Robert's BAC] on an individual and facts from the night of the accident consistent with that level of

---

[4] The *Coughlin* Court was "unpersuaded by *Ackerman* and its progeny, which provided no rationale for requiring BAC evidence to be accompanied by independent corroborating evidence of intoxication." 2017 WL 4287350, at *8.

intoxication. [Robert's BAC] once in the emergency room was about .244. With that information, Dr. Gots estimated [Robert's BAC] to be .27 on the night of the accident. According to Dr. Gots, this level of intoxication is consistent with poor reflexes, lack of coordination, and poor memory, as demonstrated by [Robert's] inability to remember how he ended up on the ground.

1925(a) Op. at 15-16 (internal citations omitted); *see id.* at 5-7. Dr. Gots opined "that, on the night of the incident, [Robert] was sufficiently intoxicated to affect all aspects of his functioning, including his ability to walk." *Id.* at 7. Therefore, pursuant to **Coughlin**, we conclude that the trial court properly admitted the evidence of Robert's BAC.[5]

Next, the Solos assert that the trial court erred in (1) failing to declare a mistrial after the jury asked questions during deliberations and improperly

_____

[5] Even if we were to decide this issue based on pre-**Coughlin** law, we would still conclude that the BAC evidence was admissible because it was sufficiently corroborated by other evidence of intoxication. As the trial court explained:

[Gloria] Williams testified that, on the night of the accident, when she asked [Robert's] wife what happened, Mrs. Solo responded that [Robert] had been drinking that day. Also, emergency room records from the night of the incident described [Robert] as appearing intoxicated with an odor of alcohol. In fact, [Robert's] treating physicians diagnosed him as intoxicated and they could not medically clear his neck due to the intoxication.

1925(a) Op. at 15 (internal citations omitted). Further, the West Pittston Police Department Incident Investigation Report from the night of the accident stated, "[Robert] was on the ground screaming in pain and **both officers observed [that Robert] had been drinking**." Polit's Resp. to Mot. in Limine, 5/3/16, Ex. C (emphasis added).

revealed its verdict and (2) *sua sponte* instructing the jury on comparative negligence in response to those questions. These claims do not merit relief.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. **Commonwealth v. Chamberlain**, 30 A.3d 381, 422 (Pa. 2011). We may grant a new trial based on an erroneous jury instruction only if "the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." **Hall v. Jackson**, 788 A.2d 390, 399 (Pa.Super. 2001) (quoting **Fragale v. Brigham**, 741 A.2d 788, 790 (Pa.Super. 1999)). Moreover, "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." **Id.** (quoting **Wilson v. Anderson**, 616 A.2d 34, 36 (Pa.Super. 1992)).

The Solos contend that the trial court should have declared a mistrial after the following exchange occurred:

> **THE COURT:** Have you reached a verdict?
>
> **THE FOREPERSON:** We have, Your Honor.
>
> (Court reviewed verdict.)
>
> **THE COURT:** Okay, so we may have you – you may have to do a little more work.
>
> **THE FOREPERSON:** Okay.
>
> **THE COURT:** So I'm going to . . . well, I'm going to have you read the verdict first and then I'm going to . . .
>
> **[SOLOS' COUNSEL]:** Figure it out.
>
> **THE COURT:** Then we'll have a sidebar. Okay? So Mr. Foreperson, if you would read the verdict, please.

**THE FOREPERSON:** In the first – do you find the Defendant, Sam Polit, was negligent on March 8, 2012? The jury has found, yes. Was the negligence of the Defendant the factual cause of bringing about the Plaintiff's harm? The jury found, no.

**THE COURT:** Okay. So I'm going to ask for a sidebar of counsel. [Sidebar ensued.]

. . .

**THE COURT:** You're not going home yet. I have to send you out to do a little bit more work, and here's what it is. I'm going to read you the instruction and we'll have a short discussion. This is the instruction that I'm going to read to you:

The parties agree that the Plaintiff sustained some injury in the accident. The Defense medical expert testified that the accident caused some injury to the Plaintiff. The Defense disputes the extent of the injury caused. Therefore, if you find the Defendant negligent, you must award the Plaintiff some damages for those injuries. So that, therefore, there has to be some damages. Okay?

**THE FOREPERSON:** Um-hum.

**THE COURT:** I would send you out with that in mind.

**JUROR No. 6:** Do we have to stick to the Defendant being negligent? Can that be changed?

**THE COURT:** I would say that that was a conclusion you've already drawn.

**THE FOREPERSON:** Correct.

**THE COURT:** Go ahead.

N.T., 5/24-26/16, at 162-65.

After sending the jury out to deliberate further, the trial court notified counsel that it was going to call the jury back into the courtroom to clarify

what it perceived as an area of potential confusion based on the jurors'
questions. The trial court stated: "I'm getting the jury back to give them
more instructions because they could find that even if there's a factual cause
of injury, if Mr. Solo's negligence is more than Mr. Polit's that he's not entitled
to damages, and I did not instruct them that way." *Id.* at 165. The trial court
then gave the jury a supplemental instruction on comparative negligence. *Id.*
at 166-67. Thereafter, the Solos' counsel objected and requested a mistrial,
which the trial court denied. *Id.* at 167-68.

The trial court explained its reasons for denying a mistrial and giving
the supplemental instruction as follows:

> During the jury's initial return to the courtroom, an
> inconsistency with the verdict was revealed and all parties
> agreed that further instruction by the Court was necessary.
> After being instructed that, if you find [Polit] negligent, you
> must award some damages, the jury foreperson asked, on
> the record, whether the jury could change its finding of
> negligence. The jury foreperson never revealed any
> information about where the jury stood numerically. The
> only information revealed to this Court and the parties was
> the information written on the initial verdict interrogatories.
> In response to the foreperson's question, this Court did not
> direct the jury how to find and did not inquire as to where it
> stood, rather, this Court merely responded, on the record,
> that it appeared the jury had already rendered its decision
> regarding [Polit's] negligence.
>
> Soon after the jury left the courtroom, this Court raised
> the issue that its prior instruction on damages would . . .
> further confuse the jury if it were given in the absence of
> the comparative negligence instruction. Indeed, had this
> Court given only the instruction that a finding of negligence
> by [Polit] would require an award of damages, it would have
> prejudiced [Polit] and failed to assist the jury in rendering
> an informed decision. Accordingly, this Court called the jury

- 9 -

back to the courtroom and instructed on the issue of comparative negligence. Prior to reading the instruction, this Court explained to the jury that the comparative negligence instruction was necessary in conjunction with the prior instructions regarding disputed negligence and disputed extent of injury. The instructions must have been given as a whole to avoid any confusion to the jury or prejudice toward either party.

Finally, the comparative negligence instruction was also necessary during deliberations because of the verdict interrogatories that had been previously agreed to by the parties. This Court first raised with the parties that the verdict slip they had approved did not instruct that [Robert] would be barred from recovery if the jury determined that he was more than 50% negligent. Had a clear instruction regarding the issue of apportionment and contributory negligence not been given during deliberations, an improper verdict may have been rendered . . . .

1925(a) Op. at 19-21 (internal citations omitted).

The Solos do not challenge the substance of the trial court's supplemental instruction, only that the instruction was given. There is no indication in the record that the supplemental instruction confused the jury; rather, it was intended to alleviate the jury's apparent confusion regarding the apportionment of liability and damages. The instruction also adequately conveyed the applicable law. Based on our review of the record and the jury instructions as a whole, we conclude that the trial court did not abuse its discretion in either charging the jury on comparative negligence, *see Hornak v. Pittsburgh Rys. Co.*, 249 A.2d 312, 315 (Pa. 1969) ("[A] trial judge has wide discretion in directing further deliberations by a jury so that the jury might correct matters of . . . uncertainty."), or denying the motion for a mistrial, *see Chamberlain*, 30 A.3d at 422.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2017